The State ex rel. Dunn vs. Noyes.    Same vs. Elliott.

THE STATE EX REL. DUNN, Plaintiff in error, vs. NOYES, Defendant in error.

THE STATE EX REL. DUNN, Plaintiff in error, vs. ELLIOTT, Defendant in error.

*March 2 — March 16, 1894.*

Habeas corpus: *Jurisdiction: Grand jury* de facto: *Validity of indictments.*

1. Nothing less than jurisdictional defects will justify the discharge of a prisoner on *habeas corpus.*
2. Where the grand jury summoned and impaneled for one term of court holds over into the next term and at such second term is recognized by the court as a lawful grand jury, it is a grand jury *de facto,* and as against collateral proceedings (in this case writs of *habeas corpus*) the indictments found by it at the second term are valid and give the court jurisdiction to issue writs of arrest and commitments.

The State ex rel. Dunn vs. Noyes.    Same vs. Elliott.

CERTIORARI to the Circuit Court for *Milwaukee* County. The facts are stated in the opinion.

*Jared Thompson, Jr.*, attorney, and *Leopold . Hammel*, District Attorney, of counsel, for the relator.

For the defendant in error *Elliott* there was a brief by *Hugh Ryan, Charles D. Hickox*, and *W. J. McElroy*, attorneys, and *Hugh Ryan*, of counsel, and oral argument by *Mr. Ryan*. They contended, *inter alia*, that no statutory authority can be found to authorize the grand jury to continue its sessions and return indictments after the term for which it was impaneled, and it had no such authority outside of the statute. *State v. Winebrenner*, 67 Iowa, 230; *Comm. v. Bannon*, 97 Mass. 214; *Barger v. State*, 6 Blackf. 188; *State v. Harden*, 2 Rich. (S. C.), 533; *O'Byrnes v. State*, 51 Ala. 25; *Boyd v. State*, 28 Tex. App. 524; *Nealon v. People*, 39 Ill. App. 481. The alleged indictment, therefore, was not found and returned into court by a grand jury, legal or illegal, regular or irregular, but simply by a body of men which had once been but had ceased to be a grand jury, and hence the municipal court never had jurisdiction to issue the *mittimus*.

*W. C. Williams*, for the defendant in error *Noyes*, to the point that an indictment found by a grand jury at a term of court not authorized by law is void, cited *Davis v. State*, 46 Ala. 80; *Comm. v. Bannon*, 97 Mass. 218, 219; *Finnegan v. State*, 57 Ga. 427; *State v. McNamara*, 3 Nev. 70; *O'Byrnes v. State*, 51 Ala. 25; *Miller v. State*, 33 Miss. 356; Dissenting opinion of KINNE, J., in *State v. Belvel*, 56 N. W. Rep. 549; *Finley v. State*, 61 Ala. 205; *Peters v. State*, 98 Ala. 38.

ORTON, C. J.    The same questions being in both these cases, they will be considered and disposed of together. They are brought before this court by a common-law writ of *certiorari*, to review the proceedings in *habeas corpus* of

the judge of the circuit court of Milwaukee county, by which the defendants in error were discharged from imprisonment. The pleadings in the *habeas corpus* and the *certiorari* proceedings show the following facts:

On the last day of the October term of the municipal court of Milwaukee county, 1893, the grand jury of said court found and returned true bills of indictment against the defendants and four other persons, under sec. 4541, R. S., for having fraudulently received *deposits* as directors of the Plankinton Bank of Milwaukee, knowing at the time said bank to be insolvent. The defendants were detained by virtue of commitments, on failure to enter into recognizance, issued out of said municipal court after their arraignment and pleas of not guilty. There was no grand jury summoned, selected, or impaneled for the said October term of said court, but the grand jury acting for said term, and which found said indictments, was the same grand jury duly impaneled for said court at and for the previous September term thereof. No order was made by said court directing a grand jury for said October term, and no grand jury was summoned for said term. The said grand jury was ordered, summoned, and impaneled for said September term by an order dated August 3, 1893; and the said grand jury convened at the September term, on September 12, 1893, and entered upon the investigation leading to said indictments, but the same was not concluded during the said September term, and for such reason they continued their sittings over and into the said October term, and until the last day of said term, when the said indictments were found and duly returned. On the last day of the September term the said court adjourned to October 2, 1893, which was the first day of the October term. The same grand jury found and returned several other indictments and against other persons during said October term.

On these facts the learned judge of the circuit court dis-

charged the defendants, holding that said indictments were
void, and that the said municipal court had no jurisdiction,
therefore, to issue the writs for the arrest or the commit-
ments for the detention of the defendants.   I say that this
was the ground upon which the defendants were discharged,
because the want of jurisdiction in the municipal court was
the only ground upon which the defendants could have
been discharged on *habeas corpus*.   Although this is made
a question on this hearing, it is no longer an open question
in this court.   It has been repeatedly decided by this court
that nothing less than jurisdictional defects in the proceed-
ings can be considered or justify a discharge of the pris-
oner on *habeas corpus;* for errors and irregularities which
do not go to the jurisdiction of the court may be inquired
of on motion, appeal, or writ of error.   The last paragraph
of sec. 3428, R. S., provides: " But no such court or officer
on the return of any such writ [*habeas corpus*] shall have
the power to inquire into the legality or justice of any
judgment, order, or execution," etc.   This is a limitation on
the power of a judge or court to inquire of nothing less than
jurisdictional defects in the proceedings on which the im-
prisonment is based.   Mr. Justice TAYLOR, in *State ex rel.*
*Welch v. Sloan*, 65 Wis. 647, so held after an examination
of the previous cases in this court, and cited *People ex rel.*
*Tweed v. Liscomb*, 60 N. Y. 571–604; *Ex parte Lange*, 18
Wall. 163; *Ex parte Gibson*, 31 Cal. 628; Hurd, Hab. Corp.
327; *In re Perry*, 30 Wis. 268; *In re Crandall*, 34 Wis. 177;
*In re Semler*, 41 Wis. 517; *Hauser v. State*, 33 Wis. 678.   To
these may be added *In re Schuster*, 82 Wis. 610; *In re Gra-*
*ham*, 74 Wis. 450; *In re French*, 81 Wis. 597.

We take it for granted that the learned judge of the
court below held that the municipal court had no jurisdic-
diction to issue the writs and commitments on which the
defendants were arrested and imprisoned, on the ground
that the indictments on which they were based were void,

and that the indictments were void because not found by a lawful grand jury. The decision of the court below depended, then, on the legality of the grand jury that found the indictments. That question is supposed to be before us on this *certiorari*. But, as we understand the law, the court below had no right in this collateral proceeding to inquire into the legality of that grand jury and decide it to have been an illegal body without authority to find the indictments; nor has this court the right to so inquire and decide. We are precluded from inquiring and determining whether the body of men that acted as a grand jury in finding the indictments was a grand jury *de jure*, by the barrier the law sets up to protect the acts of that body in the interest of the public and public justice as a grand jury *de facto*. "The *de facto* doctrine, which was introduced into the law as a matter of policy and necessity to protect the interests of the public where those interests were involved in the official acts of persons exercising the duties of an officer without being a lawful officer," has its most salutary application to the acts of a grand jury and of other official instruments of the courts which constitute judicial proceedings. The courts are supposed to select and determine the qualifications of their subordinate official instruments necessary to the administration of justice. Their acts cannot be questioned without seriously affecting the proceedings of the courts and the conclusiveness of their judgments. The grand jury in question was summoned, selected, impaneled, and sworn for the September term of the court, and held its session and did business during that term. There is no question but that it was a legal grand jury throughout the September term. On the last day of that term this same body adjourned, with the court, to the first day of the October term, and continued its unfinished business. It is contended that this body became *functus officio* as a grand jury on and after the last

day of the September term.  It was recognized by the
court as a lawful grand jury, and the court received the in-
dictments found by it, and finally discharged it from fur-
ther service and ordered the payment of its fees.  The
legal grand jury of the September term simply held over
its term.  There cannot be a more appropriate application
of the *de facto* doctrine than to such a body as a grand
jury *de facto* while thus holding over and doing business
in the October term of the court.

This doctrine, in its application to public officers and their
acts, is well understood.  Its history, object, and uses are
exhaustively treated in the leading case of *State v. Carroll*,
38 Conn. 449.  In *People v. Petrea*, 92 N. Y. 128, an in-
dictment for grand larceny was found by a grand jury
drawn under a *void statute*.  It was insisted, on behalf of
the defendant, that the grand jury was not a lawful one or
·within the requirement of the constitution.  On behalf of
the people it was contended " that it is sufficient to main-
tain the authority of the grand jury to investigate criminal
charges and find indictments valid in their nature, that the
body acted under the *color* of lawful authority."  The fol-
lowing cases are cited to this principle:  *People v. Dolan*,
6 Hun, 232; *Dolan v. People*, 6 Hun, 493, 64 N. Y. 485;
*Carpenter v. People*, 64 N. Y. 483; *Thompson v. People*, 6
Hun, 135; *People v. Jewett*, 3 Wend. 314; *Cox v. People*,
80 N. Y. 500; *Friery v. People*, 2 Keyes, 450; *Ferris v.
People*, 31 How. Pr. 145.  The court said: "The objection
to the constitution of the grand jury which found the in-
dictment lies solely in the fact that they were drawn under
the provisions of a void statute, etc.  In all other respects
the proceedings were regular.  The jurors were drawn by
the proper officer; they were regularly summoned and re-
tained by the sheriff; they were recognized, impaneled, and
sworn as grand jurors by the court, and as grand jurors
they found the indictment; and moreover, they were good

and lawful men, duly qualified to sit as grand jurors. . . . The grand jury, although not selected in pursuance of a valid law, was selected under *color* of law and *semblance* of legal authority. ` . . . An indictment was found by a body drawn, summoned, and sworn as a grand jury, before a competent court, and composed of good and lawful men. The jury which found the indictment was a *de facto* jury, selected and organized under the forms of law." I cite largely from Judge ANDREWS' opinion, because it is in every respect applicable to the present case. In *People v. Fitzpatrick*, 66 How. Pr. 14, the indictment was found under a law *void* because unconstitutional. The above language in the *Petrea Case* was approved by the two judges, and the indictment was held good and valid, because found by a grand jury *de facto*. " The grand jurors are public officers " (Jac. Law Dict.; Toml. Law Dict.; 7 Bac. Abr. tit. " OFFICE AND OFFICERS "), and they are therefore within the common doctrine, and their acts should be held valid, as those of any other officer *de facto*. In *People v. Dolan*, 6 Hun, 232, it was not known how or by whom the names of the persons summoned, sworn, and acting as grand jurors were drawn. The court said: " It is sufficient to maintain the authority of the grand jury to investigate criminal charges and find indictments valid in their nature, that the body acted *under color of lawful authority.*"

In *In re Gannon*, 69 Cal. 541, the grand jury organized in July, 1885, held over and was not dissolved by the court until March, 1886, notwithstanding a new grand jury had been selected and returned in January, 1886. A witness refused to testify before this old grand jury, on the ground that it was not a legal grand jury. He was imprisoned for contempt, and was seeking his discharge by *habeas corpus*. The court said: "As an organized grand jury, it would be competent to act under color of lawful authority. Having been appointed to office, and having taken the oath of

office, the individual members are officers of the court, not
only *de jure* but *de facto;* and their acts are valid so far as
the public rights are concerned, although the title under
which they performed those acts may be questionable.  An
indictment found by a *de facto* grand jury is as regular as
one found by a *de jure* grand jury."  In *Ex parte Haymond*,
91 Cal. 545, a witness refused to testify before the grand
jury on the ground that it was not a legal grand jury, and
sought to be discharged from imprisonment on *habeas cor-
pus*.  The court said: "Without passing upon the question
whether the grand jury before whom the petitioner was
summoned to appear was impaneled in accordance with the
provisions of the law relating to that subject, it is sufficient
for us to say that such body has certainly a *de facto* ex-
istence."  In *Dolan v. People*, 64 N. Y. 485, and in *Car-
penter v. People*, 64 N. Y. 483, the legality of the jury was
challenged because illegally drawn by a commission under
an unconstitutional statute, and the proceedings were sus-
tained on the ground of *de facto* officers.   In *State v. Belvel*,
(Iowa) 56 N. W. Rep. 545, it is held that a grand jury com-
posed of an improper number may find a valid indictment.
In *Ex parte Springer*, 1 Utah, 214, the indictment was for
a capital offense, and the court said: "The fact that the
grand jury which found the indictment was illegal will not
be considered upon the hearing of *habeas corpus*, as we con-
ceive that we should stand upon the indictment."  In reason
and by analogy a person under an indictment seeking his
discharge on *habeas corpus* has the same right to allege that
the judge or the clerk of the court is not lawfully judge or
clerk as that the grand jury is not a legal grand jury.   The
several members of the grand jury are officers of the court,
as we have seen, and their acts should be protected by the
same principle that they are *de facto* jurors.   In *In re
Burke*, 76 Wis. 357, it was alleged that there was no office
of judge to be filled by the incumbent, but it was held that
the incumbent was judge *de facto*.

It would put an end to judicial proceedings if the legal title and qualifications of all judicial officers could be contested in collateral proceedings at the instance of aggrieved parties. This is a very important question, and a new one in this court. We have cited all the cases at hand, and from the high character of the courts they ought to be considered not only satisfactory, but sufficient, especially when based upon such cogent and conclusive reasons. We hold, therefore, that the indictments found against the defendants are not void, but good and valid indictments, so far as this collateral proceeding is concerned, because found by a grand jury acting under color of lawful authority, and a good and sufficient grand jury *de facto*. It follows, also, that the municipal court of Milwaukee had jurisdiction to issue the writs by which the defendants were arrested, and the commitments upon which they were imprisoned, and therefore the judge of the circuit court had no cognizance of the cases to discharge the defendants.

*By the Court.*— The orders of the judge of the circuit court discharging the defendants are reversed, and the causes remanded with direction to remand the defendants to the custody of the sheriff of Milwaukee county.