STATE, Plaintiff, vs. WESCOTT, Defendant.

*November 8—December 6, 1927.*

*Criminal law: Grand jury indictment: When quashed for error: Jury commissioners: Qualifications: De jure commissioners: Grand jury: How selected: Foreman: Sessions after term: Immaterial error.*

1. Under sec. 269.43, Stats., one seeking to overturn judicial action or to quash an indictment against him must not only show that error has been committed, but he must establish the fact that such error has prejudiced him by affecting his substantial rights.    p. 413.
2. In determining whether an indictment should be quashed on the ground that the grand jury which indicted defendant was illegal, the test is whether there are reasonably clear indications or preponderating inferences of fact that establish with reasonable probability that defendant was prejudiced by the matters of which he complains, in that it appears with reasonable probability that he might not have been indicted if the alleged errors had not been committed.    p. 415.
3. Under the well-established presumption of the regularity of official action, it will be presumed that one of the three jury commissioners who selected a grand jury was appointed for an unexpired term in compliance with sub. (1), sec. 255.03, Stats.    p. 416.
4. Though one of the commissioners participated in the drawing of the grand jury after the expiration of his term of office, the drawing was not illegal, since under sub. (1), sec. 255.03, Stats., two commissioners constitute a quorum; but such com-

State v. Wescott, 194 Wis. 410.

missioner is a *de facto* commissioner, and his participation in the drawing of a grand jury does not invalidate the proceeding. p. 416.

5. The fact that only fifty names were selected for service on the grand jury and this list was not certified by all of the commissioners, as required by sec. 255.13, Stats., did not prejudice the accused person, where a sufficient number of qualified grand jurors was drawn and impaneled; and the jury commissioners, being authorized by sec. 255.13, Stats., to select the entire list of grand jurors after the last Monday in November, might select additional names, when directed to do so by the court, after that date. pp. 416, 417.

6. Sec. 255.16, Stats., prohibiting service on the grand jury of persons who had served within the preceding three years, does not prohibit a grand juror from serving beyond the last Monday in November if actually engaged in the work of the grand jury at that time. p. 417.

7. A grand jury which continues to function and present indictments after the term at which it was called is a *de facto* grand jury and its indictments are as valid as those presented by a *de jure* grand jury, especially in view of sec. 255.17, Stats., which expressly grants to the grand jury the power to return indictments from time to time "until discharged." p. 417.

8. Sec. 255.14, Stats., providing that the first seventeen persons whose names are drawn shall be the grand jury, is not mandatory, in view of the very clear legislative intent, as shown by the statutes, to give the court calling the grand jury the right to excuse such of the first seventeen persons called as are either not qualified or are exempt from jury duty, and for that purpose the court may examine all the prospective grand jurors. p. 420.

9. A party has no right to have any particular petit juror impaneled, and he cannot complain if a competent person is excused, so long as the jurors trying his case are fair and impartial; and an accused person has no greater right to insist that a particular person should sit upon a grand jury than upon a petit jury. pp. 423, 424.

10. The court may properly appoint the foreman of a grand jury, and the accused cannot complain in the absence of a showing that his rights were prejudiced by such appointment. p. 425.

11. In a proceeding to prohibit the circuit court from proceeding with a criminal trial, a mere allegation by the accused, on information and belief, that members of the grand jury conferred with the judge at a time when the grand jury was not

in session, without alleging that any matter connected with the charges against accused were discussed or that the indictment in any way resulted from such conferences, is insufficient to show that any of the substantial rights of the accused were affected to his prejudice.  pp. 425, 426.

ESCHWEILER, J., dissents.

ORIGINAL PROCEEDING to prohibit the circuit court for Forest county from proceeding with the trial of criminal actions in which *W. A. Wescott* is defendant.  *Writ denied.*

A grand jury returned seven indictments against *W. A. Wescott,* who interposed pleas in abatement on the ground that the statutes had not been complied with in the selection and organization of the grand jury that returned the indictments against him.  These pleas were overruled by the circuit court, G. N. RISJORD, circuit judge, presiding.

For the plaintiff there was a brief by *Harold W. Krueger,* district attorney of Forest county, *Roland J. Steinle,* special assistant district attorney, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Steinle* and *Mr. Krueger.*

For the defendant there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *Albert S. Larson* and *M. G. Eberlein.*

*I. A. Fish* of Milwaukee, as *amicus curiæ.*

STEVENS, J.  The objections made by the defendant to the method of selecting the grand jurors and of organizing the grand jury that returned the indictments against him must be viewed in the light of well established principles of law and procedure.  The grand jury was the arm of the court before our statutes relating to grand juries were passed,—before our state or our nation was formed.  Courts then possessed powers with reference to grand juries which still inhere in them unless taken away or modified by statutes.

It is well settled that prejudice is no longer presumed from every failure to follow literally the provisions of statutes

regulating procedure.   He who seeks to overturn judicial action or to quash an indictment against him must go farther than merely to show that error has been committed. He must establish the fact that such error has prejudiced him by affecting his substantial rights.  "Prejudicial error is presumed against, this presumption to prevail till overcome . . . by preponderating inferences of fact."   *Oborn v. State,* 143 Wis. 249, 280, 281, 126 N. W. 737.  This was the command contained in the Code of 1856, now sec. 269.43 of the Statutes, which provides that "the court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party."

The far-reaching force and effect of this provision of the Code of 1856 was not fully appreciated until after the legislature had again declared the public policy of the state by the passage of sec. 274.37 of the Statutes.   However, prior to the passage of this latter act this court had declared its devotion to the public policy of the state as expressed in these statutes.   Prior to the passage of this latter act the court had said that proceedings for the punishment of crime, as well as those for the enforcement of private rights, would not be nullified unless substantial rights of parties had been affected by the failure to comply with the letter of some statute or with some technical rule of procedure established in the days when those old technical rules were essential to the administration of justice, in that they gave the courts some means of protecting those who would otherwise be defenseless, even if innocent.   But now happily the need for these strict technical rules has long since disappeared, because the one accused of crime is supplied with so many means of conducting his defense that it is sometimes asserted that justice travels with leaden heel and that the accused plays his game with loaded dice, to adopt the language of one who, as a member of this court, aided so largely in bringing our decisions into harmony with the spirit of the Code.   This court in speaking through

words chosen by that distinguished jurist said that this court has "uniformly attempted to disregard mere formal errors and technical objections, not affecting any substantial right, and to adhere to the spirit of the law which giveth life rather than to the letter which killeth. It may not always have succeeded; it is intensely human, but since the writer has been here he knows that the attempt has been honestly. made." After referring to sec. 274.37 of the Statutes the court said that its "terms are clear, and will unquestionably assist the court in its effort to do substantial justice in all actions, either civil or criminal, without regard to immaterial errors or inconsequential defects. This court will loyally stand by this law, and will earnestly endeavor to administer it so as to do equal and exact justice so far as human effort can accomplish that end." *Hack v. State,* 141 Wis. 346, 352, 353, 124 N. W. 492.

Unless formal errors and technical objections "are held not to be sufficient to disturb the course of justice, in the absence of clear indications, and by preponderating inferences of fact, that they, within reasonable probability, at least, materially affected the result adversely to the complaining party,—the administration of justice would be intolerably embarrassed to the great detriment of public and private interests." In the spirit of the Code, "all irregularities and errors should be deemed inconsequential, in the absence of reasonably clear indications that the adverse party was prejudiced thereby, in that, otherwise, the result, as to him, might, within reasonable probabilities, have been different. . . . That must be the true test of prejudicial error, displacing, if necessary, the idea that prejudice is to be presumed from the mere occurrence of error and giving controlling dignity to the idea that prejudicial error is presumed against, this presumption to prevail till overcome, to the extent above indicated, by preponderating inferences of fact." *Oborn v. State,* 143 Wis. 249, 279, 280, 281, 126 N. W. 737.

State v. Wescott, 194 Wis. 410.

Because of the fact that indictment by grand jury has been little used since the constitution was so amended as to permit the use of the information, most of the cases that consider the grand jury were decided in the years when their indictments were subjected to the strict technical rules of the common law. But even these earlier cases hold that a failure to comply strictly with the statute in regard to the summoning of grand jurors will not invalidate the indictment "if the persons summoned were such as were qualified by law to serve." *State v. Cameron,* 2 Pin. 490, 497. The later cases hold that the failure to follow strictly the procedure outlined by the statutes relating to grand juries does not invalidate the indictment, and that the provisions of the Code make "unavailing all exceptions except such as relate to rulings which the court can see, from the record returned, actually prejudiced the defendant." *Niezorawski v. State,* 131 Wis. 166, 175, 111 N. W. 250.

Applying the well established rules stated above to the solution of the problems presented by this application for a writ of prohibition, the test by which this application is to be determined is whether there are reasonably clear indications or preponderating inferences of fact that establish with reasonable probability that the defendant was prejudiced by the matters of which he complains, in that it appears with reasonable probability that he might not have been indicted if these alleged errors had not been committed. When this test is applied the court is satisfied that the application for the writ must be denied.

2. The first group of objections relate to the qualifications of the jury commissioners who selected the persons who served on the grand jury which indicted the defendant. It is alleged that one of the jury commissioners was not a freeholder as required by secs. 255.12 and 255.03 of the Statutes. It also appears that another commissioner was appointed for a term of less than three years without any recital in the order that the appointment was for an unexpired term. This

is claimed to be in violation of sub. (1) of sec. 255.03 of the Statutes, which requires that the commissioners shall be appointed for a three-year term, but provides for appointments for an unexpired term to fill vacancies. Under the well established presumption of the regularity of official action, it will be presumed that this commissioner was appointed for an unexpired term.

It is also alleged that one of the commissioners participated in the drawing of the jury after the term of office for which he was appointed had expired. If this be a valid objection, the other two commissioners constituted a quorum and could act under the express provisions of sub. (1) of sec. 255.03 of the Statutes. But such commissioner was a *de facto* commissioner. "A jury drawn by a *de facto* commissioner would be as regular as one drawn by a *de jure* commissioner." *Dolan v. People,* 64 N. Y. 485, 495. But in any event no possible prejudice to the rights of the defendant is shown because these commissioners acted in the selection of the grand jury.

3. Sec. 255.13 of the Statutes requires the jury commissioners to select annually "on or before the last Monday of November" not less than seventy-five nor more than one hundred and fifty persons qualified to serve as grand jurors whose names shall be entered in a record book and certified by the commissioners. The commissioners selected only fifty names and this list was not certified by all of the commissioners: "This precise number is fixed by the statute for no purpose of benefit or advantage to the persons who may be presented for indictment. The sole object of requiring this number is to secure the attendance at court of a sufficient number to constitute a grand jury. If more or less should be drawn no harm would be done any accused person, provided a sufficient number of qualified jurors were drawn and impaneled." *Dolan v. People,* 64 N. Y. 485, 493.

Before the grand jury in question was drawn, the commissioners, pursuant to the order of the court, drew ninety

additional names. This procedure was in accord with sec. 255.13 of the Statutes, which provides: "If for any cause such list shall not be made as aforesaid before the last Monday in November in each year said commissioners may make out the same at any time thereafter." If the commissioners can select the entire list after the last Monday of November, they may select additional names when directed to do so by the court after that date.

The fifty persons whose names were placed on the list prior to the last Monday of November had not "served as a grand juror" within the preceding three years in violation of sec. 255.16 of the Statutes. The mere placing of a person's name on the grand jury list does not constitute service on the grand jury. The statute does not prohibit a grand juror from serving beyond the last Monday in November if actually engaged in the work of the grand jury at that time.

4. The grand jury was called during the May term of the court and continued its deliberations after the close of the term and returned the indictment here in question during the succeeding term. It was the rule of the common law that grand jurors could act only during the term for which they were called, but that rule does not prevail in Wisconsin.

A grand jury which continues to function and present indictments after the term at which it was called is a *de facto* grand jury and its indictments are as valid as those presented by the *de jure* grand jury. *State ex rel. Dunn v. Noyes,* 87 Wis. 340, 345, 346, 58 N. W. 386. In this case the attack upon the indictment was collateral and not direct. But the court cites New York cases in which indictments returned by *de jure* grand juries were sustained as against a direct attack. This is the rule that prevails in other jurisdictions. *People v. Morgan,* 133 Mich. 550, 95 N. W. 542; *State v. Marsh,* 13 Kan. 596, 606; Edwards, The Grand Jury, 58.

If this rule were in doubt, the legislature in 1903 removed this question from the realm of doubt by the enact-

ment of sec. 255.17 of the Statutes, which expressly grants to the grand jury the power to return indictments from time to time "until discharged." The grand jury here in question was not discharged until after it returned these indictments against the defendant.

The modification of the old common-law rule by sec. 255.17 of the Statutes is in line with the public policy of the state as expressed in recent legislative enactments, which for all practical purposes abolish terms of circuit court by providing that such terms shall be continuous and that all matters pending and undisposed of at the end of one term shall be continued by law and considered and disposed of at the succeeding term. Sec. 252.10, Stats. If necessary in order to sustain this indictment, it might well be held that an investigation begun by a grand jury, but not concluded before the beginning of the next term, was a matter pending and undisposed of which was by law continued to be disposed of at the next term. Any other rule would compel a grand jury to cease to function in the midst of its investigations and compel the calling of a new grand jury which would be obliged to duplicate the work already done by its predecessor.

5. All prospective grand jurors were examined by the prosecuting attorney much as petit jurors are examined on the *voir dire,* and several persons were excused by the court and additional names drawn from the list prepared by the jury commissioners until the seventeen persons that constitute the grand jury were selected. Defendant contends that both under the rules of the common law and under the statutes of Wisconsin the grand jury must be made up of the seventeen persons whose names were first drawn from the box.

While there is a basis in the early English cases for the contention made by defendant, it is by no means clear that this was the rule under the common law. Edwards in his work on The Grand Jury, 75, states: "That the right to challenge grand jurors for cause or for favor has been sel-

dom used, cannot be made an argument against its existence. It is firmly established in the common law and can only be destroyed by legislative enactment." In Illinois, where the court applied the rules of the common law as to the time when and the cause for which grand jurors might be challenged, the court held that "the authorities all agree that grand jurors could be challenged for cause, as well as petit jurors." *Musick v. People,* 40 Ill. 268, 270.

While the right to challenge grand jurors was questioned in some of the earlier English cases, we find that the majority of the judges of all the English courts sitting *in banc* affirmed the right to challenge grand jurors for cause in *Withipole's Case,* Croke's Cases, 134, decided in the reign of Charles I. Again in the *Lewis Case,* 7 How. St. Tr. 250, a case tried in 1679, the court permitted the prosecution to challenge grand jurors on the ground that they might befriend the accused in the action taken by them. The right to challenge grand jurors for cause is recognized in ch. 25, sec. 16, of Hawkins' Pleas of the Crown and in the title Juries (A) in 4 Bacon's Abridgment, 523.

In the early history of our country when the courts followed the precedents of the common law, Mr. Chief Justice MARSHALL, presiding at the impaneling of the grand jury that indicted Aaron Burr, permitted the accused to challenge prospective grand jurors because of their hostility to him. The accused insisted that he had "the same right of challenging the grand jury for favor that he had of challenging the petit jury." Chief Justice MARSHALL stated that the following were proper questions to be put to grand jurors: "First, Have you made up your mind on the case, or on the guilt of Colonel Burr, from the statements you have seen in the papers or otherwise? And finally, have you formed or expressed (or delivered) an opinion on the guilt or innocence of Colonel Burr (or the accused?)" *U. S. v. Burr,* 25 Fed. Cas. 55, 56, 58. In that case Mr. Chief Justice MARSHALL excused jurors who were challenged for cause by the defend-

ant and permitted them to withdraw from the panel, their places being taken by other jurors summoned for that purpose.

Defendant bases his contention that the statutes require the grand jury to be made up of the first seventeen names drawn from the box upon the provision of sec. 255.14 of the Statutes that "the seventeen persons whose names are first drawn shall be the grand jury." If this were the only provision of the statutes from which the legislative intent could be gathered, it might warrant the construction which defendant seeks to give to the statute. But an examination of the statutes relating to grand juries clearly demonstrates that this is not a mandatory provision of the statute. Sec. 255.13 requires that grand jurors shall "possess the necessary legal qualifications for jury duty as prescribed in section 255.01." Sec. 255.02 enumerates a list of persons who are exempt from jury service. These statutes apply equally to grand and petit jurors. "A grand juror is a juryman." *Clawson v. U. S.* 114 U. S. 477, 484, 5 Sup. Ct. 949, 29 Lawy. Ed. 179, 182. In order to determine whether a juror is exempt or whether he possesses the prescribed qualifications, he must be subject to examination and the court must possess the power to excuse him if he is either exempt or not a qualified juror.

Under the provisions of sec. 6.015, Stats., conferring equal rights upon women, the court is required to excuse any woman from jury duty, either as a grand or petit juror, whenever she makes such request. Sec. 255.20 gives any person held to answer to a criminal charge the right to object to the competency of any one summoned as a grand juror before the grand jury is sworn.

These sections show a very clear legislative intent to give the court calling the grand jury the right to excuse such of the first seventeen persons called as are either not qualified or exempt from jury duty. That this was the legislative intent is manifested by the provisions of sec. 255.15, which

gives the court the power to order that "a sufficient number of names to fill the panel" be drawn from the list prepared by the jury commissioners "in case of a deficiency of grand jurors for any cause."

Defendant's contention that he is entitled to have the first seventeen persons whose names are drawn act as the grand jury is not based upon his right to have a fair and impartial grand jury, but on the assumption that he has a right to the gambler's chance that he will secure a grand jury that will refuse to indict him regardless of his guilt or innocence. That sporting theory of justice belongs to the bygone age of the ordeal and the wager of battle.

Even if defendant were right in his contention that the rules of the common law gave no right to examine or challenge prospective grand jurors, it is clear that these old rules have been modified by the statutes to which reference has just been made.

The practice adopted by Mr. Chief Justice MARSHALL in the case of Aaron Burr is manifestly the one that should prevail, for, as was well stated by Judge RISJORD, "some one should be authorized to examine the prospective jurors as to their qualifications, and clearly disqualified jurors should be excused, else the institution of the grand jury might better be abolished." Grand jurors should be chosen who will represent the public. They should be persons who will neither indict nor refuse to find a true bill because of friendship for or sympathy for or prejudice against the defendant. If the court has no power to determine the competency of prospective jurors, situations might arise where grand juries would be impaneled who would indict because of prejudice or other improper motives, without any basis for the indictment, thus putting the public to the expense of a useless trial and unjustly blackening the name and the reputation of the defendant. The protection of the rights of the defendant, as well as of the public, demands that the court be invested with power to determine in advance whether prospective jurors

are in fact competent and impartial.   Defendant has a right to an impartial grand jury that is "as unconditional as is his right to any jury at all." *State v. Gullick,* 7 Iowa, 287, 307.

A careful reading of the record of the examination of the prospective grand jurors by the prosecuting attorney satisfies the court that the only purpose of such examination was to secure grand jurors who would pass upon the matters presented to them fairly and impartially.   The prosecuting attorney challenged no jurors.   He simply examined the prospective jurors and the court determined what persons should be excused.   The prosecuting attorney inquired with as great care as to relationships that might tend to prejudice the rights of any one whose conduct might be under investigation as he did with reference to those relationships which might make it embarrassing for the juror to vote a true bill. The examination was so conducted as to impress prospective jurors with the thought that they were called to perform one of the highest duties of citizenship which must be performed without fear or favor.

Among those excused were four men and one woman who were by law exempt from jury duty.   Three had defective hearing.   Four were so situated so far as their business was concerned as to make their excuse imperative.   Ten expressed the belief that their relationship to the parties whose conduct might be under investigation was such as would embarrass them in the performance of their duties,—some of whom said that they had expressed feeling against those whose conduct was to be investigated.   Two were interested in cases being prosecuted by the district attorney, and four others were excused who had been town and county officers or who had sold supplies to the county.   The trial judge was charged with the judicial duty of determining whether these relationships might embarrass them in the performance of their duty in investigating the acts of public officers, which was one of the purposes for which the grand jury had been called.

If the first seventeen persons called must constitute the

grand jury, then no valid indictment could be returned unless those who were by law exempt from jury service, as well as those who had such defective hearing that they could not properly perform their duties, along with those who had expressed feelings hostile to those who might be indicted, had been retained upon the grand jury. The law as found either in the decisions of the courts or in the enactments of the legislature requires no such travesty upon the administration of the criminal justice.

. There is no showing that any grand juror who voted for the indictment of the defendant was either not a legally qualified juror or not a fair and impartial juror. The application "contains no allegation of any corruption, dishonesty, or unfairness on the part of any of the officers in selecting and drawing the grand jurors, or of any design to injure the defendant or any other person. . . . It is not apparent how the alleged irregularities harmed the defendant, and it is certain that they had no relation whatever to the question of his guilt or innocence of the crime charged. Under such circumstances the indictment should be upheld, unless the facts pleaded point out some vital error. A plea in abatement is a dilatory plea, and it is the general rule that it must be strictly construed." *Dolan v. People,* 64 N. Y. 485, 492.

The defendant has no greater right to insist that a particular person should sit upon the grand jury than upon the petit jury. "The action of the petit jury is much more binding and important in both civil and criminal cases than is the action of the grand jury. The action of the former is in many respects final, while that of the latter is only initiatory. It would seem that the court should be more restricted in the exercise of the discretionary right to excuse a competent petit juror, and substitute another, than in the exercise of that right in relation to the grand jury. . . . If irregularity enters into the drawing, or impaneling, of the grand jury, it must be shown to work a wrong or injury to be available. . . . It is the duty of the court to order the drawing

and summoning of both the petit and grand jurors, and to duly impanel them. This duty imposes on the court a responsibility which calls for the exercise of sound judgment and discretion. It has been generally held that the court charged with the duty of impaneling, either the petit or grand jury, was clothed with a discretionary power, in furtherance of justice, to excuse a competent juror regularly drawn, and to order a talesman called to fill his place; and that the exercise of such discretion is not revisable. Many circumstances may arise, such as the sickness or infirmity of the juror, or of some member of his family, or of some near friend, or some emergency in his business or property, which require the exercise of this discretionary power, to secure intelligent and careful deliberation and determination of questions involving the highest rights of property, of liberty, and of life. Its exercise also frequently becomes necessary to accord to persons called to serve as jurors the commonest civilities. It has been generally exercised in favor of both grand and petit jurors. . . . There must be the same right to fill the place of the juror so excused as there is to excuse him. The one right involves the other, unless otherwise provided for. Otherwise a legal jury of either kind could not always be obtained." *State v. Ward,* 60 Vt. 142, 156–158, 14 Atl. 187.

The rule is well settled that a party had no right to have any particular petit juror and that he cannot complain if a competent person is excused so long as the jurors that tried his case were in fact fair and impartial jurymen. "We think there are very substantial reasons for holding that the excusing or setting aside even a competent and indifferent person should not be ground for the reversal of a judgment when the record shows that an impartial jury has been impaneled for the trial of the case." *Sutton v. Fox,* 55 Wis. 531, 539, 13 N. W. 477. This rule was applied to grand jurors in *People v. Jewett,* 3 Wend. 314, 321. "The general rule as to irregularities in executing the statutory method for selecting jurors is that they are to be deemed immaterial,

unless it appears probable that the persons seeking to take advantage thereof may be prejudiced thereby." *Ullman v. State,* 124 Wis. 602, 609, 103 N. W. 6.

Defendant bases his application for the writ wholly upon the alleged illegality of the grand jury, without showing how the method employed in selecting and impaneling the grand jury prejudiced his rights. He makes no showing of any prejudice, unless it be the fact that an indictment was returned against him. That fact standing alone is not sufficient. He must go farther and establish with reasonable probability clear indications and preponderating inferences that he might not have been indicted if the court had not excused these prospective jurors. Otherwise all that any defendant need do is to show that errors were committed and that he was indicted. To hold that this is a sufficient showing of prejudice is to return to the old technical common-law rule that prejudice is to be presumed in every case until the contrary is shown, when it appears that errors have been committed. This is no longer the rule in Wisconsin. The only allegation of prejudice to the rights of the defendant is a mere conclusion of law, added with pen at the close of the petition which does not state any fact showing prejudice.

6. Complaint is made because the court appointed the foreman of the grand jury. The record shows that the foreman was the principal of a public school. He was apparently a man well qualified for the place. It appears to be a common practice for the court to appoint the foreman of the grand jury. Edwards, The Grand Jury, 90. Mr. Chief Justice MARSHALL appointed the foreman of the grand jury that indicted Aaron Burr. *U. S. v. Burr,* 25 Fed. Cas. 55, 59. Even if a different practice prevailed, there is no showing that the defendant's rights were prejudiced in any way by this appointment.

7. The defendant alleges on information and belief that members of the grand jury conferred with the presiding

judge of the circuit at a time when the grand jury was not in session.    Defendant does not assert positively that such conferences were held.    He does not allege that any matter connected with the charges against him were discussed or that the indictment was in any way the result of such conferences.    This comes far short of establishing the prejudice which is an essential prerequisite to the relief which he asks.

The other questions raised by the defendant have all been considered, but it seems so clear that they could not affect the substantial rights of the defendant that it is not deemed necessary to discuss them at length.

Defendant has failed to establish that any of the matters of which he complains prejudiced any of his substantial rights or led to the selection of incompetent grand jurors. "Courts do not look with indulgence upon objections to irregularities in the mode of selecting or drawing grand jurors committed without fraud or design, which have not resulted in placing upon any panel disqualified jurors." *Dolan v. People,* 64 N. Y. 485, 494.    There is an entire absence of any showing that the irregularities complained of resulted from any design to prejudice the rights of the defendant or from any other improper motive.    The court is impressed with the fact that both the trial court and the prosecuting attorney were actuated by the desire to secure a grand jury that would act fairly and impartially with reference to the matters submitted to them and that, so far as the record discloses, they accomplished that purpose.

*By the Court.*—Writ denied.


ESCHWEILER, J. (*dissenting*).    To the doctrine that some particular prejudice to a particular defendant, subsequently indicted, from the method used in drawing a grand jury must be shown before such person may question the validity of such grand jury, I cannot subscribe.    An indictment by a grand jury that ought not to have met because not the body authorized by law would seem sufficient prejudice to warrant

his right to so question. To hold otherwise is in effect to require a summary trial on the merits.

. The very fact, as stated in the majority opinion, that such inquisitorial body is seldom used in this state is all the more reason why the statutory regulation should be followed and safeguards should be upheld. The general nature of such a body is discussed in *William J. Burns International Detective Agency v. Doyle,* 46 Nev. 91, 208 Pac. 427, 26 A. L. R. 600.

I feel that there was not a compliance with the letter or spirit of the statute; and that there was what may be termed jurisdictional error in the following particulars, the details whereof are recited in the majority opinion, viz.:

The drawing of the names; the serving after the term; the method permitted and approved of by the circuit court in the examination of the prospective jurors; and the striking from the list, or excusing without apparent cause, some who preceded on the list some of those selected. That such a body, acting as a grand jury, may be, under certain circumstances or at different stages of their proceedings, a *de facto* although not a *de jure* jury, seems to me to be beside the mark in this case. Here is a direct and prompt attack upon the body returning the indictments, and in the only manner in which the questions as to it being *de jure* can be presented, and it is not collateral as in *State ex rel. Dunn v. Noyes,* 87 Wis. 340, 356, 58 N. W. 386, cited in the majority opinion.

Surely a person against whom an indictment is found should be permitted to have tested the question whether such a body is a lawful, *de jure* body or not, and not to be answered merely—that any body seeming to be—is a lawful grand jury.

The substantial difference between the purposes and the manner of obtaining the petit and the grand jury; that the grand jury selection is *ex parte* and with no express authority given the court to excuse, without apparent cause, names on the selected list; the avowed purpose of obtaining, as was

stated by the examining counsel, representing the State, and with the apparent approval of the court, that "We have to get men who will put out of their lives everything that they knew of anybody they knew," and the many variations from statutory conditions, creates the opinion that this was not a lawfully selected and therefore not a lawful grand jury.