In the Matter of JACOB PESNER, Petitioner, *v.* COUNTY COURT OF THE COUNTY OF ROCKLAND et al., Respondents.

In the Matter of MARVIN GESS, Petitioner, *v.* COUNTY COURT OF THE COUNTY OF ROCKLAND et al., Respondents.

In the Matter of HAROLD A. SEIDENBERG, Petitioner, *v.* COUNTY COURT OF THE COUNTY OF ROCKLAND et al., Respondents.

In the Matter of BRUCE STEWART, Petitioner, *v.* COUNTY COURT OF THE COUNTY OF ROCKLAND et al., Respondents.

Second Department, July 23, 1973.

*Moskoff & Becker* (*Arnold Becker* and *Robert D. Alexander* of counsel), for Jacob Pesner, petitioner.

*Arnold D. Roseman* for Marvin Gess, petitioner.

*McCormack, Seidenberg & Damiani* (*Harold A. Seidenberg* of counsel), for Harold A. Seidenberg, petitioner.

*Evseroff, Newman & Sonenshine* for Bruce Stewart, petitioner.

*Arthur J. Prindle, County Attorney* (*Eugene N. Cavallo, Jr.* of counsel), for John A. Gallucci, Senior County Judge of the County Court, Rockland County, respondent.

*Louis J. Lefkowitz, Attorney-General* (*Samuel A. Hirshowitz* and *Lilliam Z. Cohen* of counsel), for Frank S. McCullough, Administrative Judge of the Ninth Judicial District, respondent.

*Robert R. Meehan, District Attorney* (*Thomas E. Urell* of counsel), respondent in person.

Shapiro, J. The four above-entitled proceedings, in the nature of applications for writs of prohibition, have been brought before us by orders to show cause in lieu of notices of petition under article 78 of the CPLR. Since they raise identical

questions of law, they will be determined by this opinion, but separate orders will be entered in each case.

The petitioners seek to prohibit their trials on indictments numbered 73-67, 73-66, 73-47, 73-58, 73-53, 73-63, 73-64, 73-65, 73-76 and 73-68 returned against them by an additional Grand Jury which came into existence by reason of an order made by Mr. Justice McCullough providing that the additional Grand Jury be " drawn, summoned and impanelled in the manner prescribed by law for the February, March, April and May, 1973 terms of the County Court of the County of Rockland, for the period commencing February 1st, 1973 and ending May 31, 1973, both dates being inclusive, and for such further terms of the County Court as it may be required and extended." The petitioners also seek an order dismissing the indictments and other related relief.[1] In each proceeding a motion was made by the respondent Administrative Judge of the Ninth Judicial District and by the respondent District Attorney of Rockland County to dismiss the petition.

To understand the contention of the petitioners that the additional Grand Jury was improperly impaneled and that the indictments returned against them are a nullity, it is relevant to ascertain the steps leading to the formation of the additional Grand Jury.

On January 9, 1973 Senior County Court Judge Gallucci, in writing, requested permission of Hon. Frank S. McCullough, Administrative Judge for the Ninth Judicial District, to impanel an additional Grand Jury for the period from February 1, 1973 to May 31, 1973, inclusive. This request was predicated upon the representation of the District Attorney of Rockland County that " because of the increased volume of criminal matters which must be presented to a grand jury, it is essential that an additional grand jury be drawn and empanelled to cover the period February 1 to May 31, 1973, inclusive." On January 11, 1973 Justice McCullough wrote to Judge Gallucci authorizing him " to draw and empanel an additional grand jury to cover the period February 1 to May 31, 1973, inclusive." However, the order signed by Mr. Justice McCullough on January 18, 1973 provided that " an additional Grand Jury shall be drawn, summoned and impaneled in the manner prescribed by law *for the February, March, April and May, 1973 Terms of the County Court* of the County of Rockland, for the period commencing

---

1. One of the petitions is by an attorney on behalf of his indicted clients. For the purposes of brevity, references in this opinion to the petitioners will be deemed to refer to the indicted defendants.

February 1st, 1973 and ending May 31st, 1973, both dates being inclusive, and for such further *terms* of the County Court as it may be required and extended '' (emphasis supplied).

On February 1, 1973 the additional Grand Jury was impaneled by Judge GALLUCCI. At that time he advised the jurors that they would be expected to sit '' a minimum of two days a week and a minimum of two months, with a possibility of four months.'' So far as the record discloses (see extract of minutes), he treated them as an additional February Grand Jury and made no reference to other terms of court.

CPL 190.10 provides the mechanics for the drawing of grand jurors. It reads: '' The appellate division of each judicial department shall adopt rules governing the number and the terms for which grand juries shall be drawn and impaneled by the superior courts within its department; provided, however, that a grand jury may be drawn and impaneled for any extraordinary term of the supreme court upon the order of a justice assigned to hold such term.'' According to the practice commentary on this section by Professor Richard G. Denzer (McKinney's Cons. Laws of N. Y., Book 11A, CPL 190.10, p. 98), the reason this legislation was enacted was as follows: '' On the theory that the respective Appellate Divisions are more familiar than the Legislature with the precise requirements for grand juries of each of the counties within their departments, authority to prescribe the number, frequency and *time of drawing and impaneling* such grand juries is delegated to the Appellate Divisions '' (emphasis added).

Pursuant to that enabling legislation, this court adopted subdivision (b) of section 693.3 of its Rules of Practice (22 NYCRR 693.3 [b]), which states: '' (b) For each term of the County Court in each county designated by the Appellate Division as one for which a grand jury shall be drawn, at least one grand jury must be drawn and impaneled. Additional grand juries may be drawn and impaneled upon the order of the administrative judge having jurisdiction over the courts in such county.'' It was apparently that rule of this court that Justice McCULLOUGH relied on in making his order of January 18, 1973 which directed the impaneling of an additional Grand Jury. In doing so, however, he was in error in designating the additional Grand Jury as one to sit for the February, March, April and May *Terms* of the court. A Grand Jury does not exist in a vacuum and, if it is to sit for a period of time longer than the usual period encompassed within the term, it does so because that term of court is extended for the longer period desired. However,

his order made it crystal clear that what was intended was that the additional Grand Jury to be impaneled would have a life existence for the period February 1 through May 31. The intent and purpose of his order was carried out by Judge GALLUCCI when he impaneled the "February Term" of the additional Grand Jury.

The petitioners nevertheless contend that our rule 693.3 (subd. [b]) does not and cannot authorize impaneling a grand jury for a period that would be longer than the usual term of court because CPL 190.15 precludes such an action. However, neither the terms of that section nor the accompanying practice commentary thereon (in McKinney's Cons. Laws of N. Y., Book 11A, CPL 190.15, pp. 99–100) support their claims. Subdivision 1 of CPL 190.15 provides: "A term of a superior court for which a grand jury has been impaneled remains in existence at least until and including the opening date of the next term of such court for which a grand jury has been designated. Upon such date, or within five days preceding it, the court may, upon declaration of both the grand jury and the district attorney that such grand jury has not yet completed or will be unable to complete certain business before it, extend the term of court and the existence of such grand jury to a specified future date, and may subsequently order further extensions for such purpose."

A careful reading demonstrates that the limitations set forth in section 190.15 relate *solely* to the extension of functioning Grand Juries and that a Grand Jury which "has been impaneled remains in existence *at least* until and including the opening date of the next term" (emphasis supplied).

The petitioners do not argue that under the circumstances made known to the Administrative Judge the impaneling of a Grand Jury to sit for four months was unreasonable per se or that their rights were in any way prejudiced thereby. Their entire base of reasoning is that there was an absence of jurisdiction in the premises. We do not agree. There is a distinct difference between the facts here and those in *Matter of McClure v. County Ct. of County of Dutchess* (41 A D 2d 148), upon which the petitioners so strongly rely. There, we were dealing with a Grand Jury which had completed all of its pending business and whose *extension* was sought to be accomplished in contravention of the provisions affirmatively set forth in the applicable statute (CPL 190.15).[2] Here, on the contrary, we

2. If in *McClure* we were dealing with an active, functioning Grand Jury, with unfinished business before it, our decision would have been different (see *Matter of Reynolds* v. *Cropsey*, 241 N. Y. 389, 397; *Matter of McDonald* v. *Golden*, 294 N. Y. 172, 178).

are dealing with the *original* impaneling of a Grand Jury directly in conformity with the legislation and rule above set forth. In effect, what the court did here in providing for the additional Grand Jury to sit from February 1 through May 31 was to enlarge the February Term of court so that it would terminate on May 31 instead of at the time that the next regular Grand Jury was to be convened.[3] In this connection it is important to note that the additional Grand Jury was in continuous session throughout the period for which it had been impaneled *and that the indictments sought to be vitiated were returned during that period.*

It seems clear that the legislative procedures above outlined (and the rules of this court adopted pursuant thereto) vest discretion in the Administrative Judge, whose acts and conduct are supervised by this court, to permit the impaneling of an additional Grand Jury for such a length of time as under the existing circumstances seems desirable and necessary. Therefore, what the Administrative Judge did here (although mistakenly referring to more than one term of court) was in accord with the intent and purpose of CPL 190.10, the rationale of which is to permit flexibility of action responsive to the changing requirements of the particular court being administered. Any other construction would merely act as a straight-jacket on the court and elevate form above substance. As the court said in *People v. Stern* (3 N Y 2d 658, 664) : " There is a legitimate area of supervision over the Grand Jury compatible with that body's broad jurisdiction, within which the court may make rules concerning the regulation of terms of court to which Grand Juries are attached and assignment of judges.''

We are not here confronted with the fear expressed by Chief Judge FULD in his dissent in that case and reiterated by me in *Matter of McClure (supra)*, that extension of existing grand juries — *in derogation of existing law* — may lead to "vest pocket" Grand Juries under the control of the District Attorney or the Presiding Judge, for, in the case of a Grand Jury to be impaneled, as distinguished from a Grand Jury already in existence, the final composition of that Grand Jury is not known to any of the parties involved. Furthermore, the power to impanel *an additional* Grand Jury is not left to the discretion of the individual Trial Judge, but requires prior approval of the court's Administrative Judge. In addition, the impaneling of an additional Grand Jury is premised on the assumption that

---

3. This is made amply evident when we note that all of the indictments state that they were returned at " Feb. Term 1973 ".

previously regularly scheduled Grand Juries will be too busy with the matters coming before them to handle the additional work load.

In any event, even if we were inclined to accept as valid every contention urged by the petitioners, their petitions would nevertheless be dismissable for a reason not advanced by the respondents and that is that the additional Grand Jury which returned the indictments in question was in any event a *de facto* Grand Jury possessed of all of the powers which it would have if it were a *de jure* Grand Jury. The leading case on that subject is probably *People* v. *Petrea* (92 N. Y. 128). There the defendant moved to quash the indictment returned against him on the ground that the Grand Jury that had returned it was devoid of jurisdiction because it had been selected under an unconstitutional statute. His motion was denied. After conviction he appealed and, although the Court of Appeals determined, as a matter of law, that the Grand Jury had been in fact selected under an unconstitutional statute, it nevertheless affirmed his conviction, saying (pp. 143–144): " The grand jury, although not selected in pursuance of a valid law, were selected under color of law and semblance of legal authority. The defendant, in fact, enjoyed all the protection which he would have had if the jurors had been selected and drawn pursuant to the general statutes. * * * An indictment was found by a body, drawn, summoned and sworn as a grand jury, before a competent court and composed of good and lawful men. This we think fulfilled the constitutional guaranty. The jury which found the indictment was a *de facto* jury selected and organized under the forms of law. The defect in its constitution, owing to the invalidity of the law of 1881, affected no substantial right of the defendant."

In *People* v. *Youngs* (151 N. Y. 210, 217–218), the court said: " But even if this were otherwise, and it could be said that the designation of the terms of the court was not in strict compliance with the Constitution or the statute, the objection would not, we think, avail the defendant. The court in which the indictment was found was appointed to be held by the body which the Constitution and the statute had designated for that purpose. The grand jury was regularly drawn from the body of the county, summoned and sworn as provided by law. It was at least a *de facto* jury, selected and organized under the forms of law, and that was sufficient for the protection of all the defendant's constitutional rights."

In a similar context in dealing with the effect to be given the intention of the court on the continuation of a Grand Jury,

Chief Judge LEHMAN in *McDonald* v. *Colden* (294 N. Y. 172, 179, *supra*) said: "Here it appears beyond possibility of dispute that the court by its direction intended that there should be no cessation or even interruption of the work of the Grand Jury and that the term should be continued from day to day until the investigation was completed and the court had disposed of business which might be brought before it in connection with that investigation, or until the term was ended by further order of the court. Irregularity in the formulation of that direction or of the entry in the clerk's minutes under the circumstances did not dissolve the term."

Other jurisdictions have applied the *de facto* doctrine in the same way (*State ex rel. Dunn* v. *Noyes*, 87 Wis. 340; *People* v. *Morgan*, 133 Mich. 550; *State* v. *Wescott*, 194 Wis. 410; *People* v. *Kaplan*, 256 Mich. 36; *People* v. *Hall*, 16 Ill. 2d 223; *Buchler* v. *District Ct. of County of Arapahoe*, 158 Col. 205; *State* v. *Brown*, 195 Mo. App. 590).

Since "each term may continue as long as the county judge deems necessary" (Judiciary Law, § 190-c, subd. 3), and since it is undisputed that the additional Grand Jury in this case began to function immediately after it was charged by the County Judge *and actively continued to do so without recess or adjournment until the handing up of the indictments in this case,* the position of the petitioners lacks merit.

For the foregoing reasons the applications should be denied and the cross motions to dismiss granted, without costs.

MUNDER, J. (dissenting). I agree with my colleague, Mr. Justice SHAPIRO, that the order of the Administrative Judge authorizing the additional Grand Jury was improper in directing that it be impaneled for four terms of the County Court. I also agree that the order should be treated as one authorizing the additional Grand Jury for the February, 1973 Term of the court and that the reference to the three succeeding terms should be disregarded.

I cannot agree with the further conclusion that, since we are dealing with an original impaneling rather than an extension, it was proper for the Administrative Judge to enlarge the February Term of the court to encompass the period from February 1 through May 31. Our rule (22 NYCRR 693.3 [b]) gives no authority to the Administrative Judge to create or appoint a term of the County Court. That power is vested in the County Judge by section 190-c of the Judiciary Law.[1] Each appoint-

---

1. In Rockland County the power is vested in the senior County Judge by section 189-g of the Judiciary Law.

ment of terms must be filed in the County Clerk's office (Judiciary Law, § 190-e). In Rockland County the filed order of appointment of terms provides for a term each month of the year 1973 and our court, pursuant to CPL 190.10, ordered that Grand Juries be impaneled for the January, March, May, July, September and November Terms of the County Court.

CPL 190.15 provides that "a term of a superior court for which a grand jury has been impaneled remains in existence at least until and including the opening date of the next term of such court for which a grand jury has been designated." It also provides the means by which a term of the court is extended. That may be done only by the court to which the Grand Jury is adjunct. There is neither rule nor statute that vests such authority in the Administrative Judge and what he cannot extend he cannot originally enlarge.

Thus, contrary to my colleague's view, I find the situation analogous to that in *Matter of McClure* v. *County Court of County of Dutchess* (41 A D 2d 148). There, at the expiration of the court term the Grand Jury did not join in the District Attorney's application to extend the term of the court and the existence of the Grand Jury. This resulted in an order of extension that we found void for lack of jurisdiction to make the order. Thus, the court term expired and with it the Grand Jury was dissolved. Here, no application was made to extend the February Term, the County Court made no order to extend it and the Administrative Judge was powerless either to make, extend or enlarge the County Court term. Consequently, the court term expired on March 5, 1973, the opening date of the next term of the County Court for which a Grand Jury had been designated. With the expiration of the court term the Grand Jury was dissolved. As was noted by the Judicial Council in recommending the enactment of section 225 of the Code of Criminal Procedure, the forerunner of CPL 190.10, "the existence of the grand jury is dependent upon the existence of the term of court for which it was drawn, and the final adjournment of the term of that court dissolves the grand jury" (Sixteenth Annual Report of N. Y. Judicial Council, 1950, p. 77).

There remains then to consider whether the *de jure* Grand Jury that existed until March 5, by continuing beyond that date, to return indictments which were received by the court as valid indictments, may be considered to be a *de facto* Grand Jury.

That doctrine, at least in New York, was spawned of necessity in *People* v. *Petrea* (92 N. Y. 128). There, the jurors were drawn under a statute that was declared to be unconstitutional. Until

a new session of the Legislature repaired the defect, the *de facto* status of Grand Juries had to be recognized if the criminal laws were to be enforced. *Petrea (supra)* was heavily relied upon in *State ex rel. Dunn* v. *Noyes* (87 Wis. 340, 344–345), in which the court said: "There is no question but that it was a legal grand jury throughout the September term. On the last day of that term this same body adjourned, with the court, to the first day of the October term, and continued its unfinished business. It is contended that this body became *functus officio* as a grand jury on and after the last day of the September term. It was recognized by the court as a lawful grand jury, and the court received the indictments found by it, and finally discharged it from further service and ordered the payment of its fees. The legal grand jury of the September term simply held over its term. There cannot be a more appropriate application of the *de facto* doctrine than to such a body as a grand jury *de facto* while thus holding over and doing business in the October term of the court." This construction has been followed in Michigan as well as in Wisconsin (*People* v. *Kaplan*, 256 Mich. 36; *People* v. *Morgan*, 133 Mich. 550; *State* v. *Wescott*, 194 Wis. 410). In *Wescott* the court noted that Wisconsin does not follow the common-law rule that Grand Juries may act only during the term of the court for which they were called. It noted, too, "the public policy of the state as expressed in recent legislative enactments, which for all practical purposes abolish terms of circuit court by providing that such terms shall be continuous" (p. 418).

In Illinois, under similar statutes to those of Michigan and Wisconsin, it was held in *People* v. *Brautigan* (310 Ill. 472), as stated in the later and adhering case of *People* v. *Hall* (16 Ill. 2d 223, 225), that "a grand jury could not have a *de facto* existence after a term of court ended, where a *de jure* grand jury had been impanelled by the court for the current term and was performing the duties of such a body." In *Buchler* v. *District Ct. of the County of Arapahoe* (158 Col. 205) the court noted that a new *de jure* Grand Jury had not yet been impaneled when the indictment under consideration was returned and further that orders, albeit sometimes untimely, extending the life of the grand jury had been entered.

The annotation in 75 ALR 2d 544 shows a division of authority among the courts of the several States as to the validity of indictments returned by hold-over grand juries. It would appear that where the common-law rule has been modified, or the *de facto* Grand Jury doctrine recognized, it has been done in the

light of the governing statutory provisions for extended court terms. Where the statutes did not specifically prevent the result, they were liberally construed to validate the action of the Grand Jury.

Thus, in *Matter of McDonald* v. *Colden* (294 N. Y. 172, 176) the court construed section 190 of the Judiciary Law that "each term [of the County Court] may continue as long as the county judge deems necessary." It found that irregularity in the formulation of the court's direction to continue the term or in the entry in the Clerk's minutes thereof would not serve to dissolve the term. It paraphrased Judge PECKHAM's language in *People* v. *Sullivan* (115 N. Y. 185, 188) in which he actually had said, "Nothing but the most rigorous rule of law should, under the circumstances, compel a court to admit its loss of jurisdiction and the consequent failure of all proceedings taken before it."

In *People* v. *Stern* (3 N Y 2d 658, 661) Judge BURKE observed that the Grand Jury, having been duly impaneled for the June, 1955 term of the court as an additional Grand Jury, and the term of the court having been extended by court orders, was at the time it returned the indictments in question "a duly constituted body, *de jure* in every sense".

At the time of the decisions in *McDonald* v. *Colden* (*supra*) and *People* v. *Stern* (*supra*), section 244 of the Code of Criminal Procedure, as construed by the courts, allowed a County Judge to extend the term of court for the continuation of a Grand Jury investigation either *sua sponte* or on the application of the District Attorney. We are now controlled by CPL 190.15, which, as we so recently said in *McClure* (41 A D 2d 148, 150, *supra*), renders a County Judge powerless to extend the life of a Grand Jury in the absence of a declaration by *both* the Grand Jury and the District Attorney that "such grand jury has not yet completed or will be unable to complete certain business before it."

With the clear statutory limitation on the life of a Grand Jury, extendable only as provided in CPL 190.15, there is neither room nor reason to apply the *de facto* Grand Jury doctrine. Since there is no statutory authority to originally impanel a Grand Jury for a greater length of time than the term of the court to which it is adjunct, we may not consider the order of the Administrative Judge or the prediction of the County Judge in charging the jury as legally creating or extending the court term. As I read the words "at least" in CPL 190.15, emphasized in the majority opinion, they do not mean that, without an

order of extension, the term of the court may continue beyond the opening date of the next term for which a Grand Jury has been designated.

I would grant the applications to prohibit the trials, deny the cross motions to dismiss the petitions, and dismiss the indictments, all without prejudice to the re-presentation of the facts to a properly constituted Grand Jury.

MARTUSCELLO, LATHAM and CHRIST, JJ., concur with SHAPIRO, J.; MUNDER, Acting P. J., dissents and votes to grant the application and deny the motions to dismiss the petition and to dismiss the indictments, all without prejudice to the re-presentation of the facts to a properly constituted grand jury.

Application, in *Matter of Seidenberg,* denied and motions to dismiss the petition granted, without costs.

MARTUSCELLO, LATHAM and CHRIST, JJ., concur with SHAPIRO, J.; MUNDER, Acting P. J., dissents and votes to grant the application and deny the motions to dismiss the petition and to dismiss the indictment, all without prejudice to the re-presentation of the facts to a properly constituted grand jury.

Application, in *Matter of Stewart,* denied and motions to dismiss the petition granted, without costs.

MARTUSCELLO, LATHAM and CHRIST, JJ., concur with SHAPIRO, J.; MUNDER, Acting P. J., dissents and votes to grant the application and deny the motions to dismiss the petition and to dismiss the indictment, all without prejudice to the re-presentation of the facts to a properly constituted grand jury.

Application, in *Matter of Gess,* denied and motions to dismiss the petition granted, without costs.

MARTUSCELLO, LATHAM and CHRIST, JJ., concur with SHAPIRO, J.; MUNDER, Acting P. J., dissents and votes to grant the application and deny the motions to dismiss the petition and to dismiss the indictment, all without prejudice to the re-presentation of the facts to a properly constituted grand jury.

Application, in *Matter of Pesner,* denied and motions to dismiss the petition granted, without costs.