### UNITED STATES v. SHANNABARGER et al.
### SAME v. CARTELLO et al.
### Nos. 13682, 13684.

District Court, W. D. Missouri, W. D.
April 1, 1937.

Maurice M. Milligan, U. S. Atty., and Randall Wilson, Sam C. Blair, and Thomas Costolow, Asst. U. S. Attys., all of Kansas City, Mo.

I. J. Ringolsky, William Boatright, Harry Jacobs, Ludwick Graves, James Daleo, Clif Langsdale, and Charles Garnett, all of Kansas City, Mo., for defendants.

OTIS, District Judge.

The (1) pleas in abatement and the (2) demurrers and motions to quash indictments in these two cases present questions similar to those presented by like pleadings in the case of United States of America v. Ellis Buck et al., No. 13646 (and in cases Nos. 13648 and 13650). Our reasons for overruling the pleas, demurrers, and motions in those cases are set out in our opinion of February 10, 1937, filed in case No. 13646, and in each of the companion cases just referred to. See United States of America v. Ellis Buck et al. (D.C.) 18 F.Supp. 213.

The only question raised in the pleas in abatement now under submission which is not discussed in the opinion referred to is also the principal question raised in the motions to quash the petit jury panel. It is that new question which we discuss in this memorandum.

It has been discovered by learned counsel for defendants that during a long period of years the clerk of this court and the jury commissioner, to obtain names of persons qualified for jury service, have sent letters to leading citizens upon whose judgment and acquaintance they felt they could rely, asking them to send in names of qualified persons. Testimony taken in connection with the motions to quash the petit jury panel indicate that a certain form of letter has been used for at least sixteen years. It bears internal evidence that it was adopted before the time when there were two judges in this district (and there have been two judges for approximately fourteen years). The form of this letter is as follows:

"Dear Sir:

"As officers of the United States District Court for the Western District of Missouri, it is our duty to select the names of suitable persons as Grand and Petit

Jurors for the United States District Court. As we must, more or less, rely upon the assistance of some proper person in given localities for information as to the fitness of jurors we beg that you will be so kind as to render this service in your county. We would be pleased if you would furnish, at the earliest date possible, the names of a number of citizens of your acquaintance, together with their occupation and P. O. address. We beg to impress upon you the fact that it is the desire of the judge of this district to obtain for jury service the best men in the community, men of intelligence, unquestioned integrity, and who represent the best interests of the community. We do not want men for this service simply because they have nothing else to do, and who would like to spend the time and procure the pay for coming to court. We want men of business affairs. Be careful not to send men deficient in eyesight or hearing. The statute exempts the following persons * * *.

"Yours very truly,

—————————————
Clerk

.Jury Commissioner.

The testimony shows that the names of citizens from counties in the district other than Jackson county (Kansas City is in Jackson county and the letter is not used in selecting names of qualified jurors from Jackson county) which are put in the jury wheel [1] largely are made up (to the extent of about 90 per cent. of the names) of names recommended by citizens in replying to the letters of the form described.

The contention of learned counsel for defendants is that the present jury panel (from which juries will be drawn to try the defendants if the cases are tried when they are set for trial) should be quashed for the reason that the letter referred to was used in gathering the names to be placed in the wheel from which the panel was drawn. Counsel contend, first, that the clerk and jury commissioner, by indicating in the letter that "We do not want men for this service simply because they have nothing else to do and who would like to spend the time and procure the pay. We want men of business affairs," in effect have purposely discriminated against

wage earners and the unemployed. A second contention of counsel is that by asking citizens throughout the district to furnish names of citizens suitable for jury service the clerk and jury commissioner have delegated their authority to unauthorized persons, that, in effect, it is not the clerk and the jury commissioner who select the names of suitable jurors (as the law contemplates), but third persons who select them. We proceed to consider these contentions.

■ 1. Section 411, title 28, U.S.C. (28 U. S.C.A. § 411), provides that: "Jurors to serve in the courts of the United States, in each State respectively, shall have the same qualifications, subject to the provisions hereinafter contained, and be entitled to the same exemptions, as jurors of the highest court of law in such State may have and be entitled to at the time when such jurors for service in the courts of the United States are summoned."

The statutes of Missouri (R.S.Mo. 1929, § 8746 [Mo.St.Ann. § 8746, p. 4691]) provide: "Qualifications of jurors Every juror, grand and petit, shall be a male citizen of the state, resident of the county, sober and intelligent, of good reputation, over twenty-one years of age and otherwise qualified."

We do not find that the Supreme Court of Missouri has defined the phrases "sober and intelligent," "of good reputation," and "otherwise qualified," used in section 8746. Certainly these are terms the application of which permits of wide discretion on the part of whatever administrative official is vested with the selection of names to be placed in the jury wheel. The federal statutes vest the clerk and jury commissioner with the exercise of discretion in determining whether the names which they place in the jury box are names of persons having the minimum qualifications prescribed by the state statute. That it was intended that they should exercise discretion is obvious from the fact that in any judicial district of the United States (with few exceptions) there are several hundred thousand citizens having the qualifications prescribed by law for jury service and from the further fact that it is only required that the names of as many as 300 persons shall be in the jury wheel at

---

[1] The names are put in a "box" rather than a "wheel." We use the word "wheel" because the phrase "jury box" has a different meaning generally and is used in this memorandum in that different meaning.

any one time. Title 28, § 412, U.S.C. (28 U.S.C.A. § 412).

We are not at all certain that it is not within the power of a United States District Court to add to the minimum qualifications for jury service prescribed by a state statute so long as no citizen is *disqualified* for grand or petit jury service on account of race, color, or previous condition of servitude. Title 28, § 415, U.S.C. (28 U.S.C.A. § 415). We are not at all certain that it is not within the authority of a District Court, by rule (and so long a practice as we have here is evidence of a rule), to direct that the name of no mere loafer, no hanger-on about courthouses, no professional justice of the peace court juror shall be put in the jury wheel by the clerk and commissioner. If qualifications for admission to the bar prescribed by a state statute are minimum qualifications only and do not preclude the prescribing of still higher qualifications by the judicial power (and that has been ruled by most respectable authority, e. g., the Supreme Court of Wisconsin in State v. Cannon, 206 Wis. 374, 240 N.W. 441), it might well be contended that qualifications of jurors prescribed by the state statute are only minimum qualifications. The very language of the federal statutes (section 411, title 28, U.S.C. [28 U.S.C.A. § 411]) supports the theory. The statute provides that "jurors to serve in the courts of the United States * * * shall have the same qualifications * * * as jurors of the highest court of law in such State." Does that not mean that such jurors shall not have less qualifications than jurors in the courts of the state? May not the judicial power, which in this instance is vested by the Constitution in the United States District Court, prescribe still other qualifications? These are questions which suggest themselves but which need not be answered here.

If, as a matter of fact, in this district the clerk and jury commissioner did purposely and systematically exclude the names of wage earners from the jury wheel and if a wage earner were on trial in a criminal case, there might be merit in a motion to quash the panel. Mamaux v. United States (C.C.A.6) 264 F. 816. (But would it be suggested that if a social parasite were to be tried he would be heard to complain that social parasites purposely were excluded from the panel?) To say, however, that a request for names of suitable persons which suggests that men are not suitable "simply because they have nothing else to do and who would like to spend the time and procure the pay for coming to court," and that the kind of men desired are "men of business affairs," to say that that is equivalent to the purposeful and systematic exclusion of "wage earners" is untenable.

It is unfair to suggest that the sentence, "We want men of business affairs," should be read without referring to the immediately preceding sentence, "We do not want men * * * simply because they have nothing else to do, and who would like to spend the time and procure the pay for coming to court." Obviously these two sentences are to be read together. The one is the complement of the other. The clear purpose is to obtain the names of men who are not mere ne'er-do-wells, mere loafers, mere hangers-on. No doubt the judge who, long ago, prepared or at least authorized this form of letter, knew the kind of jurors sometimes selected for service in justice of the peace courts in Missouri. He desired that there should be a higher type of jurors in the courts of the United States. Happily, through many years, no one, until now, has sought to compel a lowering of the standard.

It seems to us that when these two sentences are thus read together, as they should be, the phrase "men of business affairs" must be interpreted only to mean men who have *some* business as distinguished from men who have *none*. But if we consider the phrase "men of business affairs" by itself, disregarding the immediately preceding sentence, still it does not exclude wage earners. Certainly the phrase has no technical meaning in the law. Any man who is connected in any way with any business, any man who transacts business of any kind, is a man of business affairs.

It was contended upon the oral argument by learned counsel for defendants that the clerk and jury commissioner had no discretion to purposely and intentionally exclude the names of unemployed persons from the jury wheel. We cannot agree with that contention. Even if other qualifications may not be added to those prescribed by Missouri statutes as the minimum qualifications for jury service, still the fact of chronic unemployment, the fact

that a man has not now and generally does not have any business, those facts certainly have a bearing upon and may be considered in determining whether one is "sober" and "intelligent" and "of good reputation." We shall be surprised indeed to discover that the judicial power of the United States is so weak as that it does not have strength enough to close the door to the jury box against mere hangers-on and loafers.

The suggestion that the use of the form of letter ·set out above results in a jury panel of capitalists, a panel from which men in the lower economic brackets are excluded, conclusively is answered by a mere inspection of the particular panel attacked by these motions. We append to this memorandum as an appendix a copy of the venire facias just as it was issued to the marshal. From it appears the business of each ·juror summoned. They are farmers, blacksmiths, painters, merchants, printers, bookbinders, road workers, etc. That the contention of defendants is empty of real merit perfectly appears from a mere glance at this list of citizens and their vocations in life.

2. The second contention of learned counsel for defendants is that, by asking citizens in various sections of the district to suggest names of qualified jurors and then by using those names, the clerk and jury commissioner have delegated their function to third persons. The contention seems to us untenable. Certainly it was intended by the Congress that the clerk and jury commissioner should discharge their function in some practicable manner, considering the size of the district in which they serve and its population. This district, for example, includes more ·than one-half the area of the state of Missouri. It includes a total of 66 counties in Missouri. The population of the district in 1930 was 1,768,324. In what conceivable way could the clerk and jury commissioner exercise the discretion vested in them except by consulting citizens in whom they have confidence in the various localities of the district? Of course, the answer to the question is, there is no other way. Congress intended that the clerk and jury commissioner in each district should discharge their function in some practicable way.

Upon the argument of these motions we put to counsel for defendants the question as to what method he would suggest should be followed by the clerk and jury commissioner (who reside in Kansas City) to obtain names of qualified jurors in· far distant counties. We asked counsel whether he believed it would be proper for the clerk and jury commissioner to write to citizens and ask for names of persons who are "sober," intelligent," and "of good reputation." Counsel immediately answered (it was the, natural answer) that that would be a quite proper way to proceed. That, however, is exactly the way in which the clerk and jury ·commissioner did proceed.

At a later time in the oral argument, counsel, having meanwhile reflected that the answer given to the question asked completely destroyed the theory of his argument, modified his first and instinctive answer by saying that the proper thing for the clerk and jury commissioner to do was to obtain the names of all male citizens over twenty-one years of age in a given county and then to send that list of names to citizens who would strike from it those who were not "sober," not "intelligent," not "of good reputation." The first answer which counsel gave to the court's question was the intelligent answer. The second plan suggested (although demanded by the theory of the argument) obviously is utterly impracticable. To adopt that plan would mean either that hundreds of thousands of names must be put in the jury wheel or that names must be selected from hundreds of thousands, not by any intelligent process of elimination, but by mere chance. As for us, we will ·not be responsible for so interpreting the statutes of the United States as that they will compel ·the exclusion of intelligence and the elevation of ignorance and chance in any phase of the administration of justice.

In each of the above-entitled cases, the plea in abatement, the demurrer and motion to quash the indictment, and the motion to quash the petit jury panel are overruled. To the overruling of each of these motions each defendant in each case is allowed an exception. It is so ordered.

APPENDIX

In the District Court of the United States for the Western District of Missouri
Western Division

The President of the United States of America, To the Marshal for the Western District of Missouri, Greeting:

We command you to summon without delay the following named persons, whose names have been regularly drawn according to law, to-wit:

| | | | | |
|---|---|---|---|---|
| 1. | Wm. Albrecht | 2507 Faraon St., St. Joseph | Buchanan | Tablet Company |
| 2. | W. I. Baker | Ava | Douglas | Farmer |
| 3. | N. M. Ball | Norwood | Wright | Farmer |
| 4. | F. D. Baxter | Marionville R2 | Lawrence | Farmer |
| 5. | J. L. Bay | Tarkio | Atchison | Autos, Implement |
| 6. | John Billingsby | Lockwood | Dade | Banker |
| 7. | Roy Brady | Appleton City | St. Clair | Trucking |
| 8. | Frank W. Brand | 519 S. 15th St., St. Joseph | Buchanan | Plumber |
| 9. | Ett Brown | Wheeling | Livingston | Carpenter |
| 10. | C. A. Chambers | Butler | Bates | Insurance |
| 11. | W. H. Charters | Butler | Bates | Farmer |
| 12. | Barney Clark | Crocker | Pulaski | Painter |
| 13. | Orville C. Clark | Richmond | Ray | Stockman |
| 14. | O. G. Cobb | Savannah | Andrew | Merchant |
| 15. | J. A. Cobbin | Butler | Bates | Ford dealer |
| 16. | James O. Cooper | Thayer | Oregon | Grocer |
| 17. | C. V. Couch | Bronaugh | Vernon | Farmer |
| 18. | Cooper Dawson | Anderson R-2 | McDonald | Farmer |
| 19. | Roy DeAtley | Pineville | McDonald | Farmer |
| 20. | C. C. Dial | Montevallo | Vernon | Blacksmith |
| 21. | Walter Doubikin | Iberia RFD | Miller | Farmer |
| 22. | John Dunnegan | Bolivar | Polk | Banker |
| 23. | Henry Eldred | Macks Creek | Camden | Farmer |
| 24. | W. E. Evans | Lockwood | Dade | Stock |
| 25. | Guy French | Napton | Saline | Farmer |
| 26. | Roy C. Gerber | Versailles | Morgan | Farmer |
| 27. | Charles D. Gipson | Trenton | Grundy | Merchant |
| 28. | J. M. Gofourth | Blue Eye | Stone | Farmer |
| 29. | C. T. Hargis | Higbee | Howard | Farmer |
| 30. | Clay Harned | 3rd & Moniteau Sedalia | Pettis | Salesman |
| 31. | C. M. Harris | Bunceton | Cooper | Merchant |
| 32. | John Harvill | Keltner | Christian | Farmer |
| 33. | Claud Henson | Cape Fair | Stone | Farmer |
| 34. | Orin Hethman | Horton | Vernon | Farmer |
| 35. | W. R. Hicks | Galena | Stone | Farmer |
| 36. | Chas. W. Huff | Fairgrove R-3 | Greene | Farmer |
| 37. | Luther Hunt | Clinton | Henry | Auto Loans |
| 38. | Everett Hutsell | Rayborn | Wright | Farmer |
| 39. | M. M. Johnston | Platte City | Platte | Farmer |
| 40. | W. F. Keyser | Sedalia | Pettis | Secy. Mo. St. Bank Assn. |
| 41. | E. J. Kling | Butler | Bates | Salesman |
| 42. | C. E. Klinger | Fair Grove | Greene | Farmer |
| 43. | Jim Lawson | Osborn | DeKalb | Farmer |
| 44. | Wm. J. Linebaugh | Clearmont | Nodaway | Oil Station |

| | | | |
|---|---|---|---|
| 45. H. B. Lindsey | Preston | Hickory | Filling Station |
| 46. Martin Loesch | 804 Jackson Jefferson City | Cole | Bookbinder |
| 47. Arnold Macey | Neosho R-4 | Newton | Farmer |
| 48. E. R. McCormick | Parkville | Platte | Retired |
| 49. Roland Merrigan | Conception Jct. | Nodaway | Merchant |
| 50. Donald Miller | Maysville | DeKalb | Merchant |
| 51. L. I. Mitchell | Craig | Holt | Grain Dealer |
| 52. E. B. Moffet | Springfield | Greene | Loans |
| 53. Matthias Muenks | Loose Creek | Osage | Farmer |
| 54. Edwin Nichols | Ashland | Boone | Farmer |
| 55. George Norman | Galena | Stone | Road Worker |
| 56. John Payne | Fayette | Howard | Farmer |
| 57. Harry Tholburn | 1421 S. Madison Webb City | Jasper | Printing |
| 58. J. H. Thomas | Bowers Mill R. D. | Lawrence | Farmer |
| 59. Grant Sadler | Rogersville R-2 | Greene | Farmer |
| 60. Truman Smith | Neosho | Newton | Salesman |
| 61. Louis Stein | Chillicothe | Livingston | Clothing |
| 62. J. L. Stokes | Maysville | DeKalb | Farmer |
| 63. Roger Rawlings | Columbia | Boone | Abstractor |
| 64. William Robinson | Princeton | Mercer | Farmer |
| 65. E. H. Wagle | Edgerton | Platte | Contractor |
| 66. L. L. Waters | Fulton | Callaway | Merchant |
| 67. Frank Whitlow | Tarkio | Atchison | Autos |
| 68. R. G. Wiley | Clinton | Henry | Farmer |
| 69. H. A. Wimer | Knobnoster | Johnson | Lumberman |
| 70. A. R. Worsham | Mountain Grove | Wright | Farmer |

to be and appear before our District Court of the United States within and for the District aforesaid, at the United States Court room in the City of Kansas City, Missouri, on Monday, the 5th day of April, 1937, at 9:30 o'clock A. M., then and there to serve as petit jurors for the November Term of said Court and not depart the Court without the leave thereof.

Hereof fail not and have you then and there this writ with your proceedings thereon.

Witness the Honorable Merrill E. Otis, Judge of the District Court of the United States for the Western District of Missouri, this 24th day of March, 1937, and the one hundred sixty-first year of the Independence of the United States of America.

<div align="right">

A. L. Arnold, Clerk

By ——————————

Deputy Clerk.