### MAMAUX v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. May 4, 1920.)

No. 3352.

1. Constitutional law ⬉⇒221—Exclusion of wage-earners from grand jury must be purposeful, to constitute discrimination.

Conceding that the purposeful exclusion from the grand jury which indicted defendant and the jury which convicted him of members of the wage-earning, laboring class, otherwise qualified, merely because they belong to that class, constitutes unlawful discrimination, the exclusion must be intentional and because they were of such class, and the mere fact that there were no wage-earners on the jury does not support the claim of discrimination.

2. Indictment and information ⬉⇒140(2)—Purposeful exclusion of wage-earners from juries a question of fact on motion to quash.

As the law of Ohio does not exclude persons of the wage-earning class from jury service, the question whether there was a purposeful exclusion of such persons from the grand and petit juries is a question of fact, on a motion to quash on that ground.

3. Indictment and information ⬉⇒140(2)—Evidence admissible on motion to quash to show discrimination in selecting juries.

Conceding that the purposeful exclusion from grand and petit juries of members of the wage-earning laboring class because belonging to that

class, constitutes unlawful discrimination, the rejection of evidence of such purposeful exclusion on motion to quash the indictment would constitute reversible error.

**4. Indictment and information ⬅⮞140(2)—Motion to quash must be supported by evidence aside from the motion.**

A motion to quash the indictment on the ground that wage-earners had been intentionally excluded from grand and petit juries, though supported by the affidavit of defendant's attorney, was not evidence of the facts alleged, and where no proof was offered in support of the motion it was properly overruled.

**5. Indictment and information ⬅⮞140(2)—Statement, in motion to quash, of readiness to verify, does not dispense with offer of proof.**

A statement, in a motion to quash the indictment for discrimination in the selection of grand and petit juries, of defendant's readiness to verify the facts alleged, did not dispense with the necessity of the actual presentation or offer of specific proof to support the motion.

**6. Criminal law ⬅⮞1172(1)—Instruction as to defense that objectionable statements were made under compulsion held not prejudicial.**

On a trial for violating the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212a–10212h), defended on the ground that defendant, who was in custody for another offense, made the objectionable statements under compulsion of the judge, deputy sheriff, and other officials, an instruction that a threat of future injury would not justify an act otherwise constituting a crime, *held* not prejudicial.

**7. Criminal law ⬅⮞1122(5, 6)—Exception to failure to charge ineffective, where request or charge given does not appear in record.**

On a trial for violating the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212a–10212h), by statements made while defendant was in custody for another offense, an exception to the "failure of the court to charge the jury that if the defendant was under moral compulsion, in that he believed he was required to answer the men who had the authority to question him on these points, he would not be guilty," was ineffective, where the record did not show that such request was presented, or what, if anything, the court charged on that proposition.

**8. Criminal law ⬅⮞1122(5)—Failure to charge not reviewable, where record does not show what was charged or requested.**

The failure to instruct on defendant's contention that the violation of Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212a–10212h) was procured by officers having him in custody, and that he was actually lured into such violation, is not reviewable, where the record does not show what, if anything, the court charged on that subject, or what it was asked to charge.

In Error to the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Jacques Mamaux was convicted of an offense, and he brings error. Affirmed.

Joseph W. Sharts, of Dayton, Ohio, for plaintiff in error.
Stuart R. Bolin, U. S. Atty., of Columbus, Ohio.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error was convicted upon an indictment under section 3 of the Espionage Act of June 15, 1917, as amended May 16, 1918 (40 Stat. 553 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10212c]), charging him with uttering and publishing, while the United States was at war with Germany, certain lan-

⬅⮞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

guage and statements concerning, respectively, the flag and the military forces of the United States, intended to bring such flag and military forces, respectively, into contempt, scorn, contumely, and disrepute. This writ is to review the judgment of conviction. The errors assigned, as presented here, relate to, first, the overruling of a motion to quash the indictment; and, second, an instruction contained in the charge to the jury.

1. By the motion to quash, so far as material here, it is asserted that—

"The names selected and put in and those drawn from the jury box, both for grand and petit jury service herein, do not include names of the wage-earning laboring class, which depends mainly or entirely upon the sale of its labor power for maintenance, to which class defendant belongs, and which is a large class within said division and district, being at least one-half the population thereof. Members of said class have been purposely excluded from said jury service, and this defendant thereby deprived of his right of trial by due process of law as provided by article 5 of the amendments of the Constitution of the United States. * * * The defendant says all these facts are prejudicial to his defense, and all of them he is ready to verify."

The make-up, and the proceedings on the impaneling, of the petit jury (there was no challenge to the array) strongly tend to negative the charge of purposeful discrimination as to that jury, which included, not only a bookkeeper (who had but two shares of stock in the company he worked for), a clothing salesman, who had no interest in the business save as an employé, and a man employed in the shipping department of a coal company, but (if wage-earners are to be limited to those engaged in manual, menial, or mechanical labor) one who for nine months in the year drove a truck and the remainder of the time worked as a carpenter or as a printer.

[1-5] As to both the grand and petit juries: For the purposes of this review we shall treat the motion to quash as unequivocally asserting that members of the wage-earning laboring class were purposely excluded from service on the grand jury which indicted defendant, and from the petit jury which convicted him, and because they were of that class, notwithstanding the possible ambiguity in the statement that "members of that class have been purposely excluded from said jury service," etc., as well as the grave and unusual nature of the allegation made and the legal requirement that the defense offered must be pleaded with strict exactness. Agnew v. United States, 165 U. S. 36, 44, 17 Sup. Ct. 235, 41 L. Ed. 624. So treating the allegations, and conceding, for the purposes at least of this opinion, that the purposeful exclusion from either jury of members of the wage-earning laboring class (otherwise legally qualified) merely because they belong to that class, constitutes unlawful discrimination of the same character as if on account of race or color, and further conceding that the motion to quash was seasonably made (Carter v. Texas, 177 U. S. 442, 447, 20 Sup. Ct. 687, 44 L. Ed. 839; Crowley v. United States, 194 U. S. 461, 474, 24 Sup. Ct. 731, 48 L. Ed. 1075), we find, upon the record before us, no error in denying the motion. The mere fact, if it were such, that there were no wage-earners on the jury, would not be enough to entitle plaintiff in error to complain. It must at

least appear that wage-earners were purposely excluded because they were of that class. Martin v. Texas, 200 U. S. 316, 318, et seq., 26 Sup. Ct. 338, 50 L. Ed. 497; Thomas v. Texas, 212 U. S. 278, 283, 29 Sup. Ct. 393, 53 L. Ed. 512. As by the law of Ohio persons of the wage-earning class are not excluded from jury service, the question whether there was such purposeful exclusion and discrimination became, on the filing of the motion, one of fact. Martin v. Texas, supra, 200 U. S. at pages 318–320, 26 Sup. Ct. 338, 50 L. Ed. 497.

The record does not indicate that any evidence whatever was introduced in support of the motion. Nevertheless, had such evidence been offered and rejected, the denial would, on the concession before made, constitute reversible error. Carter v. Texas, 177 U. S. 442, 448, 20 Sup. Ct. 687, 44 L. Ed. 839. The record, however, in this regard indicates merely that on the opening of the trial, and on the withdrawal by leave of the court of the plea of not guilty theretofore entered, the motion to quash (that day filed) was "upon consideration by the court" overruled, and, after similar overruling of demurrer to the indictment and re-entry of the plea of not guilty, the trial proceeded. There was no offer whatever of proof in support of the motion, unless by the statement therein of readiness to verify the facts alleged, and the fact that the motion was supported by affidavit of the attorney of plaintiff in error. But, assuming that, had the government noticed the motion for argument as a matter of law (as does not appear to have been done), a different situation might be presented, it is clear that—

"The facts stated in the written motion to quash, although that motion was verified by the affidavit of the accused, could not be used as evidence to establish those facts, except with the consent of the * * * prosecutor or by order of the trial court. No such consent was given. No such order was made. The grounds assigned for quashing the indictment should have been sustained by distinct evidence introduced or offered to be introduced by the accused. He could not, of right, insist that the facts stated in the motion to quash should be taken as true simply because his motion was verified by his affidavit. The motion to quash was therefore unsupported by any competent evidence; consequently, it cannot be held to have been erroneously denied." Charley Smith v. Mississippi, 162 U. S. at page 601, 16 Sup. Ct. 903, 40 L. Ed. 1082.

In the Smith Case, as is the case here, the prosecution had not formally denied the facts alleged in support of the motion, as occurred in Martin v. Texas, supra, in which latter case (200 U. S. 320, 26 Sup. Ct. 339, 50 L. Ed. 497) the Smith Case was cited and quoted from with approval; the court adding:

"The present case cannot be distinguished from the Smith Case, and we are unable to hold, upon this record, that it was error to overrule the motions to quash; for, as already stated, it does not appear that the facts stated in those motions were established by evidence, or that the accused, after filing his motions, made any separate offer to prove them by witnesses or was denied the opportunity to make such proof."

It seems clear that the statement in the motion of readiness to verify did not dispense with the necessity of actual presentation or offer of specific proof at the time the motion was brought up for action thereon.

2. Defendant was arrested for intoxication and lodged in the county jail. His conduct immediately thereafter is said to have been so vio-

lent and destructive that the jailer was obliged to use physical force in locking him in a cell. In the struggle with the jailer, or in a fight with another prisoner, or both, he claims to have been "beaten up." On the next day he had a talk at the jail with the deputy sheriff, and later with the mayor, also with a judge 'of the court of common pleas, and a day or two later he was brought into the sheriff's office, where there were present the deputy sheriff, the judge referred to, the mayor and an investigator of the federal Department of Justice. There was evidence that the language and statements charged in the first count of the indictment were made to the deputy sheriff on the morning after defendant's incarceration, and that those charged in 'the second count were made at the conference a day or two later in the sheriff's office. Upon the trial the defense, at least in part, seems to have been that the statements were induced by compulsion and duress on the part of defendant's interlocutors; defendant testifying that in a talk with the deputy sheriff the morning after the arrest (presumably the one testified to by that officer) he was told that, if the deputy's questions were not answered, defendant would "go through the same machine as I went through the night before"; that "it was absolutely compulsory that I answer the questions, and if he was not able to get any answers from me he would bring in sufficient force to get it"; that the judge in the course of his conversation told plaintiff in error, "You will be forced to answer my questions; that is what I am here for," and that he answered the judge's questions because "Judge Miller and Mr. Beahrs [the deputy sheriff] told me it was absolutely compulsory that I answer their questions"; that at the hearing at which the representative of the Department of Justice was present he was told that "it was absolutely essential that I answer; * * * I answered because I was told that I had to answer," and that "I was very fearful of those officers at the time they were talking to me, * * * owing to the brutality shown by Beahrs"; also that when he was in the sheriff's office he was led to believe he was undergoing a second trial. With one exception[1] each of the officials named denied any threats, compulsion, or duress; the testimony being, on the contrary, to the effect that he was told by one or the other of those persons that he need not answer questions unless he wished to do so.

[6] In the course of the charge the presiding judge said:

"There is another matter interposed here as a defense, and that is the defendant's claim that whatever statements he made were made under duress or compulsion, that here were certain officers of the law about him who quizzed him, and that he was told he had to answer, and that he made the answers there under compulsion. Did he do so? Is that the situation here? The government's position is that whatever he did was done voluntarily; that he was warned, and there is evidence here, for instance—Miller, as I recall it; but it is for you to say what the evidence is—that brings in other matters that might in any event be held to be reprehensible, and that he was warned that he need not answer unless he desired. There is evidence here by

---

[1] The exception is this: The deputy sheriff stated that when, on the morning after the incarceration, he asked defendant what his nationality was, and "he said he was nothing, I told him that was a fair question, he was intelligent, and he would be obliged to answer that question. He said, 'If you have to know what I am, then, by God, I am an I. W. W.'"

the government that, whatever his condition was on the night that he was taken to the jail, he was sober on the next day and on others of the subsequent days when he was in prison and had conversations with the persons mentioned. Is the government's position correct that this man was sober, and that he acted voluntarily, and that there was no compulsion upon him? There is a conflict in the two claims made, and it is for you to say which is correct.

"An act which would otherwise constitute a crime may be excused on the ground that it was done under compulsion or duress. The fear which will excuse the commission of a crime must have proceeded from a reasonable apprehension of an immediate and actual danger threatening the accused with death or with bodily harm. His apprehension of the loss of property or of slight or remote injury to his person is not sufficient. A threat of future injury is not enough. 12 Cyc. 161."

This was followed by a further instruction, which we print in the margin.[2]

Counsel for plaintiff in error excepted—

"to the ruling of the court that apprehension of future injury would not be enough to excuse the statements, and the [asserted] failure of the court to charge the jury that if the defendant was under moral compulsion, in that he believed he was required to answer the men who had the authority to question him on these points, he would not be guilty under this indictment."

Thereupon the court said:

"There is a conflict in the testimony as to whether there was anything said which would look toward duress or compulsion, and you will understand * * * that you will have to determine whether there was any such or not."

No further exception appears. Error is assigned upon the charge as contained in the second paragraph of the quotation therefrom contained in this opinion (beginning with the words "an act which would otherwise constitute a crime"), as well as that contained in the note.

[7] So far as concerns the defense of compulsion or duress through fear, the criticized instruction is supported by authority. Indeed, upon this record, the only exception in that regard which plaintiff in error is entitled to urge is that relating to the instruction that "a threat of future injury is not enough." I. C. R. R. Co. v. Skaggs, 240 U. S. 66, 72, 36 Sup. Ct. 249, 60 L. Ed. 528; Denison v. McNorton (C. C. A. 6) 228 Fed. 401, 408, 142 C. C. A. 631. It is doubtful whether the testimony of plaintiff in error tended to show that he was on either occasion actuated by fear or "threat of future bodily injury," as distinguished from fear or threat of a practically immediate injury, even if it should be thought that the court's statement immediately follow-

[2] "I have just read to you the law on the matter of duress or compulsion, and now, taking this evidence, it will be for you to say whether this defendant made any statements there which were due to a reasonable apprehension of immediate and actual danger threatening him with bodily harm. Was there any threat of that kind? Was there anything in the situation that would give rise to such an apprehension on his part? The apprehension of injury, if it were of a slight or remote injury, would not be sufficient. A mere threat of future injury would not be enough. It would have to be such a situation as would give rise to a reasonable apprehension of immediate and actual danger threatening the defendant with more than slight or remote bodily harm. You heard the evidence, and it will be for you to say whether there was any duress or compulsion or not."

ing the exception did not sufficiently cover the subject; and the exception to the alleged failure to charge that "if the defendant was under moral compulsion in that he believed," etc , is ineffective because of absence of anything in the record to show that such request was presented, or what, if anything, the court charged upon that proposition.

It is even more doubtful whether there was substantial testimony that the language and statements charged in the first count were induced by the alleged threats of the deputy sheriff, which defendant testified were made following his refusal to comply with the deputy's demand "to know where I came from, and my occupation, and my nationality, and·so forth," questions usually put to prisoners—and the sentence imposed under the conviction upon both counts was much less than was imposable under the second count alone. Hardesty v. United States (C. C. A. 6) 168 Fed. 25, 26, 93 C. C. A. 417. In our opinion there was at least no prejudicial error in the portion of the charge excepted to.

[8] The seriously and forcibly urged ground of attack upon the charge is its alleged failure to recognize and properly instruct upon defendant's contention, made here, that the commission of the alleged offense was actually procured, and that defendant was actually lured into it, within the meaning of the criminal law. As counsel states it:

"The trial court, we believe, has entirely mistaken the law. The crime consists in the utterance of the words. But the prisoner was induced to utter the words. If left ·to himself, he would not have uttered them. The spectacle of officers of the law deliberately coaxing and quizzing the prisoner into the commission of a crime, in order to charge him with it, is revolting, it bears all the essentials of a procurement. Public policy forbids conviction for a crime thus induced."

But the difficulty in considering the defense just stated is that we are left in the dark as to what, if anything, the court charged on that specific subject, or even what it was asked to charge. The record states only that "in the course of said charge the court said" (then follows only so much of the charge, exceptions, and remarks of the· court as we have quoted in this opinion).

The judgment of the District Court should be affirmed.