No. 14,461.

THE PEOPLE *v.* CLIFFORD.
(98 P. [2d] 272)

Decided November 13, 1939. Rehearing denied January 8, 1940.

318

Mr. JOHN H. CARROLL, Mr. ARTHUR F. ZARLENGO, Mr. BYRON G. ROGERS, Attorney General, Mr. REID WILLIAMS, Assistant, for the people.

Mr. PHILIP HORNBEIN, for defendant in error.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

UNDER section 500, chapter 48, '35 C. S. A., providing that in certain situations in criminal cases a writ of error shall lie on behalf of the people, the latter here seek a review of the decision of the trial court quashing an information filed therein against the defendant in error, to whom we shall hereinafter refer as the defendant. The information purported to charge bribery and an attempt to bribe a member of the Thirty-First General Assembly through the medium of intoxicating liquor allegedly furnished him by the defendant. In so far as pertinent to the error assigned, the defendant's verified motion to quash, fundamentally is grounded upon the contention that the information was based upon evidence which defendant involuntarily and without warning was required to give before a grand jury recently sitting in the City and County of Denver, at which time, although unknown to him, defendant claims he was suspected of

the crime named in the information, whereby he asserts the constitutional inhibition contained in section 18 of article II of the Constitution of Colorado, to the effect that no person shall be compelled to testify against himself in a criminal case, was violated. It is conceded that when called and during the time he testified, defendant did not claim the privilege of refusing to answer any of the questions propounded on the ground that his answers might tend to incriminate him or object on any basis whatsoever. He, however, argues, as he did below, that a fair interpretation of the constitutional provision and the common-law privilege upon which it is based, requires the holding that a person may not be subjected to inquisition or called as a witness by the people in any judicial inquiry which has for its primary object the determination of his guilt or innocence of a given offense. The principle upon which the defendant relies is stated in the form most favorable to him in *People v. Bermel*, 128 N. Y. S. 524, 525, in the following language: "The general rule applicable to the examination of defendants before the grand jury is this: If there is being conducted a general investigation into affairs and conditions private or public, not aimed at any particular individual or individuals, and witnesses are subpoenaed and sworn before the grand jury making this investigation, a witness may claim the privilege of refusing to answer any question which might tend to incriminate him, and he cannot be compelled to answer. He cannot be compelled to be a witness against himself as to the commission of a crime before any investigation or hearing recognized by law. * * * If the witness upon such general investigation, not aimed at him, fails to claim this privilege or constitutional right, his testimony may be used against him, or even be the basis of an indictment. But where, on the other hand, the investigation before the grand jury is a proceeding against him, or, being ostensibly a general investigation, is, in fact, as shown by the circumstances and evidence, a proceeding

against him, then the defendant's constitutional right is violated if he be subpoenaed before the grand jury, sworn and questioned, though he makes no claim of privilege or exemption. Briefly stated, if the person testifying is a mere witness, he must claim his privilege on the ground that his answers will incriminate him, whereas, if he be in fact the party proceeded against, he cannot be subpoenaed and sworn, even though he claim no privilege. * * * The party testifying may, in fact, be the defendant or the party proceeded against, and not a mere witness, although he be not under arrest or openly charged with the crime or proceeded against in name. The title of the proceeding cannot determine rights, as constitutional protection is one of substance and not of form. If the person examined before the grand jury be in fact the one aimed at, sought for, and charged with the crime, the title of the proceeding cannot make his examination legal." There is an adherence to this distinction in the following cases: *People v. Gillette*, 126 App. Div. 665, 111 N. Y. S. 133; *People ex rel. v. Davy*, 105 App. Div. 598, 94 N. Y. S. 1037; *Counselman v. Hitchcock*, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110; *People v. Singer*, 18 Abb. N. C. (N. Y.) 96; *People v. Haines*, 1 N. Y. S. 55; *State v. Froiseth*, 16 Minn. 296; *State v. Gardner*, 88 Minn. 130, 92 N. W. 529; *State v. Sly*, 63 S. D. 162, 257 N. W. 113; *State v. Corteau*, 198 Minn. 433, 270 N. W. 144. Also cited as supporting defendant's contention are: *State v. Naughton*, 221 Mo. 398, 120 S. W. 53; *State v. Rixon*, 180 Minn. 573, 231 N. W. 217, 68 A. L. R. 1501; *United States v. Edgerton*, 80 Fed. 347; and as to persons in custody *Boone v. People*, 148 Ill. 440, 36 N. E. 99, and *Taylor v. Commonwealth*, 274 Ky. 51, 118 S. W. (2d) 140. An exhaustive discussion of the subject will be found in Wigmore on Evidence (2d ed.), vol. 4, §§2250 to 2284.

■■ Immunity from self incrimination is a privilege immovably fixed in our Constitution. The existence of the privilege is one of the outstanding and distinctive

features of the common-law system of jurisprudence and one of the highest protections to the liberty of the citizens of a free democracy. Always the courts have been, and they should be, zealous in preserving the privilege. In so doing, however, they ought not to give it more than its due significance. It is to be respected rationally for its merits, not worshipped blindly as a fetish. Wigmore on Evidence (2d ed.), §2251 (4). Some of the authorities above cited may justly be subject to the criticism contained in Wigmore, paragraph 2251, supra, to the effect that in recent times a few courts under the guise of reasoning and interpretation, in a spirit of implicit favor, have extended the application of the privilege "beyond its previous limits as almost to be incredible, certainly to defy common sense." However, for the reasons later appearing, it is not necessary that we here attempt to announce any rule or theorem on the subject, which of necessity largely depends upon the circumstances in each case, and in disposing of the matter before us we shall proceed upon the general theory promulgated by the authorities upon which reliance is placed by defendant, without approving or disapproving the ultimate soundness of their pronouncements.

 As is obvious, the consideration of the grounds asserted in the motion required attention to matters not disclosed by the information itself. On the premise that a motion to quash will not lie where the objection does not appear or arise upon the face of the information, the people contend that the trial court erred in passing upon the legality, competency and sufficiency of the evidence adduced before the grand jury. It is quite true that ordinarily a motion to quash an information can be granted only for defects apparent on the record and not for extraneous facts. 14 R. C. L., p. 200, §43; 31 C. J., p. 802, §376. Likewise, it is the general rule that the court will not inquire whether there was sufficient evidence before the grand jury upon which to find the indictment. 14 R. C. L., p. 205, §49; 31 C. J., p. 808, §385.

However, the motion before us does not question that the evidence presented to the grand jury was amply sufficient to warrant an indictment, or, if lawfully developed otherwise, to justify the filing of an information, but defendant therein claims that his constitutional rights were invaded by the very fact of his being called and compelled to testify without being first advised of his privilege against self incrimination and without being informed that at the time he was suspected of committing the offense subsequently charged in the information. Thus the illegality of the *information* principally is charged, and questions relating to the legality and competency of the *evidence* as relating to its admissibility before the grand jury or in a subsequent trial of the defendant are not directly involved. The evidence is only pertinent of consideration in determing whether, under the circumstances disclosed, the defendant's constitutional rights were violated and not further. Although differing considerably upon the principles controlling the ultimate determination, the courts generally are in accord with the proposition that upon the constitutional ground suggested by the motion as an exception to the orthodox rule, the defendant may challenge the validity of an indictment or information ad limine. *State v. Naughton, supra; State v. Smith,* 56 S. D. 238, 228 N. W. 240; *State v. Froiseth, supra.* In some jurisdictions this question may be raised by the motion to quash. *State v. Smith, supra; People v. Bermel, supra; State v. Gardner, supra.* In others it has been held that a plea in abatement is the proper method for presenting the issue. *State v. Naughton, supra; Burke v. State,* 104 Ohio St. 220, 135 N. E. 644; *State v. Duncan,* 78 Vt. 364, 63 Atl. 225. Notwithstanding, nearly all authorities agree that whether raised by motion or plea, the contention should be considered as to its substance rather than its form. In *People v. District Court,* 29 Colo. 83, it was held that the provisions of section 1, page 50, S. L. '79, section 453, chapter 48, '35 C. S. A., to

the effect that no indictment shall be quashed because of the disqualification of any member of the grand jury, does not prevent the quashing of indictments for extrinsic errors and irregularities in the impaneling of a grand jury which go directly to the validity of the proceeding. In that connection we said: "If irregularities which invalidate such proceedings, wherever occurring, are called to the attention of the court in apt time and in an appropriate manner, they must be considered. It certainly was never intended that the questions which the relators raise in this case, in support of their application, with respect to the action of the respondent judge in impaneling a grand jury, cannot be raised if an indictment should be returned; or reviewed by this court on error, in the event a motion to quash based upon these grounds should be overruled and a trial and conviction follow." For the reasons indicated we are of the opinion that in this case the trial court committed no error in entertaining the defendant's motion to quash.

In a proceeding of this character every presumption must be indulged in favor of the view that the prosecuting officers and the grand jury proceeded legitimately and in good faith. *State v. Smith, supra.* Likewise the regularity of the proceedings of the grand jury is to be presumed. 31 C. J., p. 808, §383. Also the burden is on the defendant raising the constitutional question with reference to his having been subpoenaed and examined as a witness before the grand jury to show affirmatively that at the time he was called, in truth and in fact, the grand jury was engaged in the investigation of his guilt or innocence of a criminal offense. *State v. Smith, supra.* The grounds assigned for quashing, if not established by the record, must be supported by distinct evidence introduced or offered by the accused. 31 C. J., p. 814, §392, supra. In the light of these procedural considerations and the circumstance that the burden of proof in connection therewith can never shift to the people, it would seem certain that when a motion of

this character is filed by defendant the course to be adopted by the district attorney in resisting it must rest in his discretion. He need not file a written admission or denial of the motion. *Peckham v. People*, 32 Colo. 140, 75 Pac. 422; *State v. Joseph*, 45 La. Ann. 903, 12 So. 934. Of course he may, if he thinks the situation so requires, controvert supporting affidavits, file counter affidavits or introduce evidence relating to the questions raised by the motion to quash. In the case before us the district attorney in the first instance, filed nothing and depended solely upon argument to defeat the motion. Notwithstanding that defendant in apparent recognition of the procedural necessities above pointed out, declared in the motion to quash his readiness "to prove the matters and things herein alleged by testimony," when the motion came on for hearing no evidence whatsoever in support thereof was introduced. Upon completion of the argument the trial court took the matter under advisement and subsequently, upon the premise *that no denial of the averments of defendant's motion had been filed by the district attorney*, in a written opinion, subject to mentioned conditions hereinafter to be discussed, concluded that the motion should be sustained. In proceeding on the indicated adopted premise, the trial court erred. In the first place, as has been mentioned, the district attorney was not required to plead to the motion and his failure to so do did not amount to an admission of the truth of the allegations of the motion. *Peckham v. People, supra.* In this connection, as we have seen, it was the duty of the defendant to sustain the motion by competent proof. The evidence relied upon to show matters de hors the record in support of a motion to quash must be other than the affidavit of verification to the motion, which was the sole support offered in the case at bar. 31 C. J., p. 814, §393, citing *Mamaux v. United States*, 264 Fed. 816; *Franklin v. State*, 85 Ark. 534, 109 S. W. 298.

Secondly, without considering the sufficiency of

the motion to justify the admission of proof, since none was offered, it was insufficient as *evidence* in support of defendant's position, even if it could be considered for that purpose. Under the authorities upon which defendant relies, his constitutional immunity and the invalidity of the information resulting from its violation, depends upon the fact that his guilt or innocence of a criminal offense is the true subject of the grand jury inquiry. In the case of *State v. Sly, supra,* relating to a "John Doe" investigation before a magistrate, upon which defendant strongly relies, it is said: "Of course, the John Doe proceeding may be validly employed in good faith in proper case, just as a grand jury investigation may, to ascertain whether a crime has been committed and, if so, who has committed it. In such case the fact, if it happens, that the person subsequently accused was subpoenaed and interrogated, either on the John Doe proceeding or before the grand jury, does not vitiate the indictment or information. As we said in the Smith case the question is one of fact and of good faith." It was, therefore, incumbent upon the defendant to allege facts establishing that the grand jury proceeding, at the time he was called, was in truth an inquiry into *his* guilt or innocence. The only allegations in the motion with reference to this subject are either in the nature of expressions of the personal belief of the defendant or in the form of conclusions which evidently establish nothing.

After the conclusion of the arguments the trial court announced that the motion to quash would be sustained, "unless the state is able to show that it has evidence not derived from the examination of the defendant, or affidavit tending to show that the defendant knew or should have known that he was himself suspected or being investigated at the time of the examination," and gave the district attorney time to proceed. For the reasons heretofore given this procedure was improper, as, under the state of the record, was the trial court's conclusion on the motion itself. However, in compliance

with the condition expressed by the court the district attorney filed what was designated as a demurrer and traverse of the motion which was verified by him. The demurrer merely challenged the sufficiency of the motion and, of course, could not have the effect of admitting pleaded conclusions. The defendant now argues that the deficiencies which we have mentioned in his motion to quash were cured by information supplied by the district attorney in his affidavit. In this connection the traverse stated that prior to the defendant's appearance before the grand jury, several witnesses had testified "with reference to the [liquor] association, lobbying activity, and employment of * * * the defendant, in connection with legislation affecting * * * liquor dealers and members of the Thirty-First General Assembly * * *; that as a result of the testimony of said witnesses the jury subpoenaed the defendant to inquire of him concerning the extent of his employment with said liquor dealers in connection with legislative matters." In our opinion this statement of the district attorney did not admit that the grand jury was aiming at the defendant in the investigation or that he was called before the grand jury for the sole purpose of securing evidence on which to indict him. Rather it implies a general investigation of the liquor dealer's lobby, not directed at any particular individual or individuals, in connection with which the defendant appeared as a *witness* and not as a suspected party defendant, and that his status at the time he testified was that of witness rather than party. Nor did the method and manner of his interrogation before the grand jury, as appears from the transcript of defendant's testimony filed with the people's traverse, impute otherwise. No occasion here arises for considering questions relating to the admissibility of sworn testimony given by a witness in any judicial investigation which is sought to be used against him upon a subsequent trial for a criminal offense, as was the situation in *Tuttle v. People,* 33 Colo. 243, 79 Pac. 1035, nor in

this proceeding is it necessary to comment on questions of waiver or the voluntary or involuntary nature of such testimony, recently fully discussed in the case of *Rogers v. People,* 104 Colo. 594, 94 P. (2d) 453.

As appears, the ruling on the motion to quash the information was wrong, and the judgment is reversed.

MR. JUSTICE BAKKE and MR. JUSTICE BOCK dissent.

MR. JUSTICE BAKKE dissenting.

I dissent. This is another case of the court swallowing a camel and straining at a gnat. A bare glance at the record discloses that the one important question—and the only important one involved—was and is whether defendant had been denied his right under the Constitution, which says, "No person shall be compelled to testify against himself in a criminal case." The two obvious facts present are that defendant testified, and that he did so under a subpoena, which is compulsion within the meaning of this particular provision of the Constitution. Stripped of juridical legerdemain, that is all there is to this case.

The court's opinion contains language used by Wigmore in his work on evidence to the effect that this constitutional guarantee should "not be worshipped blindly as a fetish." The distinguished writer aptly expressed himself. A fetish was a form of idol with the tribes of West Africa and they believed that so long as one had it in his possession "no harm could come to him." Defendant, even though a lawyer, had some constitutional rights, and so long as he was possessed of this one he was justified in assuming that "no harm would come to him."

The court's opinion disposes of this vital question as if it were simply a rule of evidence that can be juggled around like the hearsay rule. Wigmore recognizes its importance when he says that it "has something more than the ordinary interest of a rule of evidence." The law always recognized it as a privilege, and it would

seem, considering its history, that it approximates a fundamental right. Its protection should be freely accorded without quibble any time during a criminal trial.

Without discourse in detail, it is well to remember that the privilege is as old as recorded history. In the Code of Hammurabi it appears in this form: "If a man make a false accusation against a man, putting a ban upon him, and cannot prove it, then the accuser shall be put to death." In the ancient Jewish criminal code it appears in these words: "Not only is self-condemnation never extorted from the defendant by means of torture, *but no attempt* is ever made to lead him on to self incrimination. Moreover, a voluntary confession on his part is not admitted in evidence, and therefore not competent to convict him, unless a legal number of witnesses minutely corroborate his self-accusation." Mendelsohn, "Criminal Jurisprudence of the Ancient Hebrews," page 133, quoted from volume I, page 271 of "The Trial of Jesus" by Chandler. (Italics are mine.)

The maxim "nemo tenetur seipsum accusare" (no man can be compelled to criminate himself) so permeated the field of Roman criminal jurisprudence that it could well have been described as its keystone. The subsequent history of the privilege is fully set forth by Wigmore.

The fact that it is preserved in the United States Constitution and in the Constitutions of all the states of the Union, with the possible exception of one or two, indicates the regard with which it was held by our forefathers. Consequently, no good purpose would be served by dwelling longer on the philosophy involved.

The court's opinion quotes from *People v. Bermel*, 128 N. Y. S. 524, what it calls the distinction (It may be noted here that the New York Court of Appeals in the case of *People ex rel. Lewisohn v. O'Brien*, 176 N. Y. 253, 68 N. E. 353, follows the rule in the Counselman case, infra), and says that there is an adherence to this distinction in the case of *Counselman v. Hitchcock*, 142

U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110. The most significant statement appearing in the opinion in the Counselman case and recognized by the authorities as the law of that case is as follows: "It is impossible that the meaning of the constitutional provision can only be that a person shall not be compelled to be a witness against himself in a criminal prosecution against himself. It would doubtless cover such cases; but it is not limited to them. The object was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime."

The only modification of this statement that I have been able to find is in the case of *Brown v. Walker*, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, and that modification was predicated upon a federal statute which gave the defendant complete immunity from subsequent prosecution based on anything he may have said at a preliminary investigation. There is no such statute in Colorado.

The other point relied upon for reversal is that there was no evidence introduced by defendant in support of his motion to quash, at the hearing on that motion. In addition to the matter quoted by the court, in its opinion, from 31 C. J., we find this statement (p. 815, §393): "The sufficiency of the affidavits is a question of law. Unless controverted they are to be taken as true." In this case the district attorney filed a demurrer to the motion. It is elementary that a demurrer admits the truth of the opposing contentions, if they are well pleaded, and the court's opinion concedes that the court did not err in entertaining the motion, which certainly is an admission of its validity. Assuming that evidence in support of the motion was necessary, the trial court could judicially notice the facts disclosed by its own records where they are "produced and legitimately brought to the court's attention." *Downing v. Howlett*, 6 Colo. App. 291, 293, 40 Pac. 505. The court records

disclosed: 1. That defendant was subpoenaed to testify before the grand jury; 2. that he gave testimony tending to incriminate himself; 3. that the charges in the information were based upon the testimony given by him. What further evidence was necessary? The court's opinion is silent on the point, thus indicating, as I believe, that it is closing its eyes to what was perfectly apparent to the trial court when it so cautiously and advisedly gave the district attorney the opportunity to bring in any other evidence supporting the charges, not based on defendant's own story, before he sustained the motion.

"Appeals of this kind present this further anomaly. The defendant has been acquitted, and goes about as a free man. Yet if the state's appeal is successful, public record is made of the fact that in the opinion of the highest judicial tribunal of the state there were certain errors in the lower court which probably prevented the defendant from being brought to justice. In fact he is a free man. But in the view of the appellate court he ought not to be." Criminal Appeals in America, by Lester B. Orfield, page 67.

In disposing of the cause in this manner the court, it seems to me, is trifling with the defendant's constitutional privilege. It ill becomes us, as the people's tribunal of last resort to so dispose of it. This attempt to carry the weight of so profound a constitutional guarantee as freedom from self incrimination — a right of free men as old as the pyramids — across the abyss of the "thumbscrew and the rack" on the tight rope of technical pleading is fraught with such potentially dire results as to make believers in a government of laws shudder.

I yield to no one in my insistence upon integrity in public office, but in ferreting out the culprits, I also insist that it should be done in a manner which recognizes the constitutional rights of all, be they kings, potentates, saints or felons.