No. 21872.

C. CHARLES BUCHLER *v.* THE DISTRICT COURT IN AND FOR THE COUNTY OF ARAPAHOE, AND THE HONORABLE MARVIN W. FOOTE, JUDGE OF SAID COURT.

(405 P.2d 950)

Decided September 20, 1965.    Rehearing denied October 11, 1965.

206

FRED J. PFERDESTELLER, FRED W. VONDY, JOHN M. DEISCH, VICTOR N. NILSEN, for petitioner.

MARTIN P. MILLER, for respondents.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

In an original proceeding in this court Buchler seeks to prohibit the district court in and for the County of Arapahoe from proceeding further in a criminal proceeding now pending in that court wherein Buchler, by grand jury indictment, is charged with unlawfully exercising an office in violation of C.R.S. 1963, 40-7-37. Buchler contends that the respondent court and the judges thereof are without jurisdiction to hear and determine the matter because of "serious irregularities and improprieties in the operation of the grand jury" which indicted him.

Specifically, Buchler contends that — as of the date the indictment was returned — the grand jury which indicted him was an irregular and illegal body, for the reason that prior thereto it had "expired with the term of court in which it was summoned." Buchler also asserts that the indictment is invalid and subject to a motion to dismiss for the additional and further reason that certain unauthorized persons were permitted to attend sessions of the grand jury which was investigating him and his activities. These "unauthorized" persons were two special investigators then serving in the office of the district attorney for Arapahoe County and a court reporter who was in attendance for the purpose of recording the proceedings of the grand jury.

The following chronology will perhaps serve to point up Buchler's primary contention, as well as to put the controversy in better focus:

1. the first term of court in Arapahoe County for the calendar year of 1964 commenced on February 4, 1964;

2. the statutory grand jury provided for by C.R.S. 1963, 78-6-1, which jury eventually returned the indictment against Buchler, was impaneled and sworn in on March 17, 1964;

3. the first term of court in Arapahoe County for 1964 ended on October 13, 1964, on which date the second term of court for 1964 commenced;

4. this second term of court for 1964 in Arapahoe County ended on January 19, 1965, at which time the 1965 term of court commenced;

5. on January 22, 1965, upon motion of the district attorney the respondent court entered a written order, back-dated to January 12, 1965, continuing the grand jury for 60 days;

6. on March 12, 1965, upon further motion of the district attorney the respondent court entered an order continuing the grand jury to March 25, 1965;

7. on March 26, 1965, upon motion of the district attorney the respondent court entered an order continuing the grand jury to April 5, 1965; and

8. on April 5, 1965, the 1964 statutory grand jury made its formal report to the respondent court and at the same time returned an indictment against Buchler, whereupon the grand jury by order of court was discharged from further service.

Buchler filed in the respondent court a motion to dismiss the indictment, contending that the indictment was void and invalid and that the trial court was without jurisdiction to hear the matter because of these alleged irregularities in connection with the grand jury. This motion the trial court denied and it was at this juncture that Buchler instituted an original proceeding in this court.

It is Buchler's basic position that the grand jury which indicted him "expired" at the end of the term of court in which it had been impaneled, *i.e.*, October 13, 1964. According to Buchler, the respondent court was without power and authority to extend the life of the grand jury beyond October 13, 1964; but he then goes on to argue that even if the respondent court did have such power and authority it nevertheless failed to enter any formal order purporting to extend the life

of the grand jury till January 22, 1965 — at which time the grand jury had been "dead" for some three months. It is claimed that a "dead" grand jury cannot be re-vivified in this fashion. It is further pointed out that the district attorney's motion of March 26, 1965, was filed one day after the grand jury had expired under the purported order of March 12, 1965.

■ Respondents counter with the argument that under the circumstances the grand jury which indicted Buchler did *not* expire on October 13, 1964, but on the contrary continued, at least as a *de facto* body, until it was formally discharged by appropriate order of court on April 5, 1965. With this general position we are in accord.

■ At the outset it should be observed that we are not here concerned with what is sometimes referred to as a "special" grand jury, but only with the statutory grand jury provided for by C.R.S. 1963, 78-6-1 through 7. Our attention has not been directed to any statute which specifically fixes the length of time for which a statutory grand jury may lawfully sit, though the applicable statute does fix the time when such grand jury shall be impaneled. In this regard, C.R.S. 1963, 78-6-1 provides as follows:

*"Time of drawing—classification.*—Grand juries shall not be drawn, summoned or required to attend the sitting of any court in any county in this state unless specially ordered by the court having jurisdiction to make such order. In counties of the first class the court shall cause to be drawn and summoned a grand jury to attend at the sitting of such court at the first term of such court in each year, and in all other counties it shall be in the discretion of the court to call a grand jury or not. For the purpose of this section all counties and every city and county having a population of one hundred thousand inhabitants and over shall be classified as counties of the first class."

As already noted, Buchler claims that the respondent

court was powerless to authorize the grand jury to serve even one day after October 13, 1964, but that even if it be determined that it is possessed of such power, the respondent court in fact did not in apt time thus extend the life of this grand jury. In support of this general proposition Buchler cites, among other authorities 38 C.J.S. p. 1023, wherein it is stated that in the absence of a statute to the contrary, "the life of a grand jury terminates at the expiration of the term of court for which it is summoned."

There is admittedly a diversity of judicial thought on this particular subject. Some jurisdictions hold that a grand jury becomes in effect *functus officio* on and after the last day of the term of court in which it was organized; and furthermore that in the absence of express statutory authority to so do, the trial court is powerless to extend the life of the grand jury beyond the term of court in which it was impaneled. See *Ex parte Frye*, 173 Kan. 392, 246 P.2d 313.

■ Other jurisdictions, however, hold that where a lawfully impaneled grand jury holds over into a term of court subsequent to the one in which it was organized, and at such succeeding term of court is still recognized by the court as a lawful body, it is a good and sufficient grand jury *de facto* and that indictments returned by it are not void, but valid; and that such is especially true where a *de jure* grand jury has not in the meantime been impaneled. For an annotation of this subject, see 75 A.L.R.2d 544.

■ A *timely* order of court extending the life of a grand jury is perhaps the best evidence that a trial court is recognizing as a lawful body a grand jury which holds over into a term of court subsequent to the term in which it was organized. However, though the trial court in the instant case did not in every instance extend the life of the grand jury by *timely* order, the fact that it entered such orders nonetheless indicates that the trial court still recognized the grand jury as being a legally

constituted body. Furthermore, on April 5, 1965, the respondent court accepted the indictment here in question, which is a further indication that the trial court recognized the grand jury as being a lawfully constituted body. It was on this date that the grand jury was discharged by appropriate order. And, finally, it is to be noted that as of the date when the 1964 grand jury returned the indictment against Buchler the 1965 grand jury had not yet been impaneled. Under all of these circumstances we now hold that the indictment against Buchler is not void merely because the grand jury returned the same at a term of court subsequent to the term in which it was organized.

In support of the foregoing see *State v. Noyes,* 87 Wis. 340, 58 N.W. 386, wherein the Supreme Court of Wisconsin declared as follows:

"It is contended that this body became functus officio as a grand jury on and after the last day of the September term. It was recognized by the court as a lawful grand jury, and the court received the indictments found by it, and finally discharged it from further service, and ordered the payment of its fees. The legal grand jury of the September term simply held over its term. There cannot be a more appropriate application of the de facto doctrine than to such a body as a grand jury de facto while thus holding over and doing business in the October term of the court. This doctrine, in its application to public officers and their acts, is well understood."

See also in this regard, *People v. Hall,* 16 Ill.2d 223, 157 N.E.2d 26; *People v. Morgan,* 133 Mich. 550, 95 N.W. 542; and *State v. Wescott,* 194 Wis. 410, 217 N.W. 283.

Buchler goes on to argue that the indictment is also subject to a motion to dismiss for the further reason that certain "unauthorized" persons were permitted to attend sessions of the grand jury at a time when he was himself testifying before that body. As already mentioned, these allegedly "unauthorized" persons were

two investigators then apparently serving on the district attorney's staff, as well as the court reporter who was in attendance at all sessions of the grand jury. Again, there is a diversity of judicial expression as to whether the presence of unauthorized persons at sessions of a grand jury vitiates its indictments. In this regard, see 4 A.L.R.2d p. 394, where the prevailing rule is said to be that the presence of unauthorized persons during grand jury proceedings is, at most, a mere irregularity, not sufficient to constitute a ground for setting aside the indictment returned by the grand jury unless prejudice is shown. In the instant case it should be noted that there is no suggestion that these "unauthorized persons" were present during the deliberation of the grand jury, just that they were merely present when he was being examined by that body. We therefore conclude that the indictment is not invalid because of the presence of these persons during the sessions of the grand jury. In support of this conclusion, see also *People v. Hartenbower*, 283 Ill. 591, 119 N.E. 605; *State v. Bates*, 148 Ind. 610, 48 N.E. 2; and *Commonwealth v. Brownmiller*, 141 Pa. Super. 107, 14 A.2d 907.

█ The foregoing should not be construed as indicating that we approve of the presence of investigators, special or otherwise, at sessions of the grand jury when others are being called to testify. On the contrary we do not look with favor upon such a practice. Rather, in the instant case we are simply holding that the mere presence of unauthorized persons of this type, does not void an otherwise valid indictment.

It is for these reasons that we conclude that the indictment in the instant case is not possessed of the infirmities perceived by Buchler and that the respondent court does have jurisdiction to proceed in the premises.

The rule to show cause is therefore discharged.

MR. JUSTICE FRANTZ and MR. JUSTICE SCHAUER dissent.

MR. JUSTICE MOORE specially concurs.

MR. JUSTICE FRANTZ dissenting:

The majority opinion appears to hold that the indictment in this case is the product of a *de facto* grand jury. Reliance is placed in part upon cases in which a grand jury continues its operation into a succeeding term of court "without an order of the court" to do so. The leading case of *People v. Hall,* 16 Ill.2d 223, 157 N.E.2d 26, 75 A.L.R.2d 541, is cited in support of the majority view. In the case under consideration there were orders, but they were orders that the grand jury shall die on certain days.

On March 17, 1964, in its formation of the grand jury, the trial court instructed as follows: "You have been selected by the court as members of and now constitute the statutory grand jury *for the February 1964 term* of the district court of Arapahoe County, State of Colorado." In effect the court advised the jury that it would have existence and should operate during the February 1964 term and that at the conclusion of that term its life would automatically expire. It should be noted that during the February term the court entered no order extending the life of the grand jury; in fact, no attempt was made to continue its existence and operation until the beginning of the January term 1965. A term had intervened between the February 1964 term and the January 1965 term.

At the beginning of the January 1965 term the court stated in part the following at an en banc session presided over by the Honorable Marvin W. Foote:

"One other thing, the grand jury now in session has not completed its work, and it is, therefore, the order of Court that it remain in session until it is prepared to report, and the appointment of a grand jury for the calendar year 1965 will be deferred until the present grand jury has completed its investigation and made its report. The Honorable Robert B. Lee *will continue* to be the presiding judge *in charge of the grand jury.*" (Emphasis supplied.)

As the presiding judge charged with the duty of supervising the grand jury, Judge Lee entered an order on March 12, 1965, extending the operation of the jury to March 25, 1965.

Arapahoe County is a county of the first class. "In counties of the first class the court shall cause to be drawn and summoned a grand jury *to attend at the sitting of such court at the first term* of such court in each year . . ." C.R.S. 1963, 78-6-1. (Emphasis supplied.) By the statute the grand jury is an adjunct of the court at the first term of such court in each year and not for succeeding terms, and certainly not for the following year. *People v. Brautigan,* 310 Ill. 472, 142 N.E. 208; *Ritchie v. Commonwealth,* 229 Ky. 654, 17 S.W.2d 738; *State v. Davis,* 107 N.J.L. 199, 152 Atl. 782.

By the terms of the statute, a grand jury could be a de jure body only during the first term of court and possibly a de facto body only during the remainder of that court year. Certainly, at the termination of the court year the grand jury is dissolved by operation of law. *Petty v. State,* 224 Ala. 451, 140 So. 585.

If the grand jury in this case had no jurisdiction as a de jure body to continue its work into succeeding terms after the expiration of the court year, it is difficult to see how jurisdiction could vest in the same body as a de facto accessory to the court. Jurisdiction cannot be vested in the inquisitorial body by consent. Want of jurisdiction of a grand jury cannot be waived and jurisdiction cannot be conferred by consent or agreement. *Ritchie v. Commonwealth, supra.*

But the majority opinion has even a greater hurdle to clear. In this case the judge presiding over the grand jury had entered an order extending its life to March 25, 1965. Its demise occurred at the conclusion of March 24, 1965. *Maynes v. Gray,* 69 Kan. 49, 76 Pac. 443, 105 Am. St. Rep. 146, 2 Ann. Cas. 518. Assuming that the court had the power to extend the existence of the grand jury to that date, on and after that date the court

could not breathe life into the corpse when it had decreed that it should expire before March 25th and it had so expired. *McDonald v. Colden*, 41 N.Y.S.2d 323.

A grand jury constitutes a part of the court for the first term of such court in that year in which it is summoned. This is the clear purport and intent of the statute. *People v. Gibbs*, 413 Ill. 154, 108 N.E.2d 446. The court, in effect, by its order said that "to March 25th" the grand jury should live and on that date it should suffer total and permanent cessation of all its vital functions — it should be dead. There is no de facto existence in a dead body. Hence, the attempt of the trial court to resuscitate the grand jury at a time when rigor mortis had set in came too late.

I would address some remarks to the specially concurring opinion. In my view the order of the en banc session presided over by Judge Foote — the order upon which Mr. Justice Moore relies — was an invalid order having no force and effect.

C.R.S. 1963, 37-4-18, provides:

"In any district court composed of more than one judge, the judges may sit en banc at such time as they may determine, for the purpose of making rules of court, the appointment of a clerk, the approval of the appointments of deputies, the approval of official bonds and such like ministerial duties, *but for no other purpose whatever;* and the court so sitting en banc shall have no power to review any order, decision or proceeding of the court held by any judge sitting separately." (Emphasis supplied.)

It is obvious upon reading this section that the judges sitting en banc could act in only very limited areas and had no authority to act in respect to the operation and continued life of the grand jury. The en banc order designating Judge Lee to continue as the presiding judge of criminal matters and in charge of the grand jury was proper. That part of the order affecting the continued existence of the grand jury was wholly with-

out the ambit of the statute. *People ex rel. Rucker v. District Court,* 14 Colo. 396, 24 Pac. 260.

Mr. Justice Schauer authorizes me to say that he joins in this dissent.

Mr. Justice Moore specially concurring:

I concur in all that appears in the majority opinion authored by Mr. Justice McWilliams. The general tenor of the dissenting opinion and the nature of the argument made on behalf of Mr. Buchler are such that I feel compelled to direct attention to certain matters not elsewhere mentioned, and to comment on conclusions drawn by the dissent for which I can find no persuasive foundation.

It is conceded that there is respectable authority for the proposition that under a statute like our own "a grand jury continues its operation into a succeeding term of court 'without an order of court' to do so." It is said, however, that in the case under consideration there was an order, but it was an order that the grand jury shall die on a certain day. Careful analysis of the record before us will disclose no such order. The record affirmatively shows exactly the contrary.

On January 19, 1965, at the opening of the January term (or at the close of the preceding term — as you prefer) the Honorable Marvin W. Foote, who was the presiding judge, made the following announcement, *inter alia:*

"One other thing, the grand jury now in session has not completed its work, *and it is, therefore, the order of court that it remain in session until it is prepared to report,* and the appointment of a grand jury for the year 1965 will be deferred until the present grand jury has completed its investigation and made its report."

There is nothing whatever in any purported "order" subsequently entered by any judge which in any manner brought about the "death" of the 1964 grand jury

at any time prior to the date upon which it made its report and was discharged. The order entered as above quoted is very clear, definite and certain. The intent thereof is so apparent that I find no basis therein for the conclusion that the court intended to bring about the "death" of the grand jury, and set in motion the process by which "rigor mortis" took possession of the corpse of that investigating body.

The intent of the court in ordering the continuance of the life of the grand jury beyond the full year for which it was unquestionably selected was to see to it that the very great expenditures of time and substance involved in the long investigations in which it had been engaged should not be forever lost. The order of Judge Foote continuing the life of the grand jury until its work was finished could not be legally nullified by any other judge. In C.R.S. 1963, 37-4-17 and 37-4-18, it is provided that in a multiple judge district, one judge may not vacate or modify a judgment, decree or order made by another judge of the same court. Any orders entered by other judges to which reference is made in the majority opinion were mere surplusage and served no purpose whatever in either continuing the life of the grand jury or in bringing it to an end. No order at any time entered purported to nullify the order of January 19, 1965; and all can be harmonized.

And indeed, the grand jury was not in fact "dead"! There was no "rigor mortis" anywhere in evidence. Pursuant to the court order it remained in session; it completed its work; it returned its indictments; it made its report; it received its pay; and it was discharged on April 5, 1965. By accepting the report and the indictments the court gave conclusive proof of the intent of the order by which the jury was told to stay on the job until its work was done. No new grand jury "for the year 1965" was appointed by the court until after the functioning jury was discharged — all as ordered by the court on January 19, 1965.

The judges of the subject district court, the district attorney, and the well informed citizens of Arapahoe County recognized the grand jury as an active, functioning arm of law enforcement at all times prior to the date of its official discharge on the date of the acceptance of its report.

The petitioner himself, for a substantial period of time, recognized it as a legally constituted body. Following the return of the indictment against him and on April 22, 1965, in a hearing before Judge Foote, in the presence of the petitioner, his counsel made the following pertinent statement:

"Your Honor, due to all the publicity that has been given to this matter over the past two weeks we feel that it is only fair and proper and just to Mr. Buchler at this time to enter a plea to this charge and to ask for an immediate trial so that he can vindicate himself in the eyes of the people of this county.

\* \* \*

"Your Honor, it is only fair to this man to set this matter for trial immediately, if it meets with the Court's approval; \* \* \*"

Immediately thereafter an interview was had with Judge Lee, who had theretofore set May 7 as a date for hearing on some motions filed by petitioner. Judge Lee consented to the entry of an order vacating the setting and the motions were withdrawn. Petitioner thereupon entered a plea of not guilty.

His counsel then made the following statement:

"I wonder if the Court would, again through fairness to Mr. Buchler, give us the earliest possible date for trial, this being to the Court? It would not be an extended trial, but probably would extend over a period of maybe five days."

Some weeks thereafter the petitioner, for reasons not apparent, shifted his position and raised technicalities challenging the legality of the grand jury indictment. No longer did he desire the speedy trial which he pre-

viously had so earnestly demanded! The trial court held the indictment to be good.

Rather than proceed to the speedy trial which he had demanded, and in the event of conviction seek relief by writ of error, the petitioner commenced this original proceeding, which necessarily involved a delay in any decision based upon the evidence.

I am in complete agreement with the position originally taken by Mr. Buchler. I believe, as he insisted, that "it is only fair and proper and just" to him, and I assert that it is only "fair and proper and just" to the people of Colorado, and of Arapahoe County, that the case against the petitioner be tried upon the merits without unnecessary delay. A "cavalierly brush-off" of this whole controversy upon highly technical grounds is decidedly not in the public interest.

There is a presumption of regularity with reference to proceedings before a grand jury. One who seeks to overcome this presumption has the burden to make a far stronger showing than appears in this case. *Mulligan v. People,* 68 Colo. 17, 189 Pac. 5; *People v. Clifford,* 105 Colo. 316, 98 P.2d 272. As shown by the majority opinion there is an abundance of authority upholding the legality of the indictment. Arguments based on technical grounds should not be upheld to defeat the determination of disputes upon the merits, and to emasculate the manifest intent of a statute and a trial court's interpretation thereof if a reasonable construction of the law will result in a determination as to whether facts alleged on one side and denied upon the other are true or false.

While I agree with the statement of Mr. Justice Mc-Williams to the effect that the grand jury selected in 1964 was "at least a de facto jury," I go further and assert that it was a "de jure" investigating body until it was officially discharged. The statement in the dissent that: "By the terms of the statute, a grand jury could be a de jure body only during the first term of

court, possibly a de facto body only during the remainder of that year" amounts to a misinterpretation. The statute itself makes no such statement. No opinion of this Court has so construed the statute, and well reasoned opinions of courts of last resort elsewhere have construed similar language as does the majority opinion. Our interpretation tends to promote decisions based upon substance rather than fanciful legal technicalities.

Moreover our interpretation of the statute is consistent with the general practice of district courts for many years. Numerous occasions have arisen in years past in which a grand jury in a first class county has completed its work during a term of court beyond that in which it was selected. The trial court was familiar with this practice as indicated by the following portion of its order, to wit: "The appointment of a grand jury for the calendar year 1965 will be deferred until the present jury has completed its investigation and report."

Obviously the grand jury which was continued as an arm of the court was originally selected for the full court year of 1964; it possessed all powers as such until it was discharged, or until its successor was selected and sworn.

The dissent contains the statement that the presiding judge had no authority to extend the life of the grand jury following an en banc session of all three district judges. It is asserted: "The en banc order designating Judge Lee to continue as the presiding judge of criminal matters and in charge of the grand jury was proper." There was no order designating Judge Lee to continue as "presiding judge over criminal matters." The full order in that connection reads: "The Honorable Robert B. Lee will continue to be the presiding judge in charge of the grand jury." It is said that this order "was proper."

The paradoxical position of the dissent is, on the one hand, that the grand jury was "dead"; the order to con-

tinue it was void. On the other hand the dissent asserts that the order that Judge Lee should continue to be the presiding judge in charge of the grand jury was proper.

The appointment of Judge Lee, admittedly a proper order, necessarily presupposes an existing grand jury over which he should preside. Unquestionably he was not named to preside over the "corpse" of a grand jury.